[Sac. No. 1071.   Department Two.—August 17, 1904.]

BANK OF WOODLAND, Respondent, v. L. R. PIERCE, Treasurer, etc., of City of Woodland, Appellant.

TAXATION—CONSTRUCTION OF CONSTITUTION—LIENS UPON LAND—SOLVENT CREDITS—SECURITY UPON WHEAT TAXED ELSEWHERE.—Section 4 of article XLII of the constitution is to be construed as having reference only to taxation in the case of liens upon land, and does not apply to personal property. Solvent credits may be taxed by a city to the owner domiciled therein, though secured by a lien upon wheat situated and taxed elsewhere for full value.

ID.—AIDS TO CONSTRUCTION.—Reference may be had, in aid of the construction given to section 4 of article XIII of the constitution, to the debates had in the constitutional convention upon the adoption of that section, and to the legislative and executive construction thereof, as being entitled to a certain amount of persuasive force, and to the universal practice of assessors.

APPEAL from a judgment of the Superior Court of Yolo County.   John C. Gray, Judge presiding.

The facts are stated in the opinion of the court.

Arthur C. Huston, and Charles W. Pickard, for Appellant.

N. A. Hawkins, for Respondent.

HENSHAW, J.—The city of Woodland assessed the Bank of Woodland, the form of the assessment being as follows: "Solvent credits, money loaned on wheat, $65,000." The Bank of Woodland contested the assessment, and brought injunction to restrain the collection of the taxes. It prevailed in the trial court, and the defendant, treasurer and tax-collector of the city, appeals.

Plaintiff's contention in the trial court was based upon section 4 of article XIII of the constitution, as follows: "A mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby. Except as to railroad and other quasi-public corporations, in case of debts so secured, the value of the property affected by such mortgage, deed of trust, contract, or obligation, less the value of such security, shall be assessed and taxed to the owner of the property and the value of such security shall be assessed and taxed to the owner thereof in the county, city, or district in which the property affected thereby is situate. The taxes so levied shall be a lien upon the property and security, and may be paid by either party to such security; if paid by the owner of the security, the tax so levied upon the property affected thereby shall become a part of the debt so secured; if the owner of the property shall pay the tax so levied on such security, it shall constitute a payment thereon, and to the extent of such payment a full discharge thereof; provided, that if any such security or indebtedness shall be paid by any such debtor or debtors, after assessment and before the tax levy, the amount of such levy may likewise be retained by such debtor or debtors, and shall be computed according to the tax levy for the preceding year."

The wheat upon which the major part of the money had been loaned by the bank was actually situated in the county of Contra Costa, and had there been assessed for its full value. Plaintiff contended, under the language of the constitutional provision, that, as the moneys had been loaned upon the security of the warehouse receipts, the transaction constituted a "contract, or other obligation by which a debt is secured," and that such contract or obligation must be

deemed an interest in the property affected thereby. The rest of the argument then follows naturally and irresistibly. The value of such "security" cannot be assessed either in the city of Woodland or in the county of Yolo, but can be assessed only in the county of Contra Costa, in which the wheat, "the property affected thereby," is situate. So not only the assessment by the city of Woodland could not be upheld, but additionally, as the wheat had been taxed for its full value, to countenance the assessment here attempted to be made would be double taxation.

The strain of this case, therefore, comes upon the construction to be given to the first sentence of section 4 of article XIII, above quoted. It may be conceded that in its language it is broad enough to include all contracts of lien, hypothecation, pledge, chattel mortgage, and the like affecting personal property. But was such the intention of the framers of the constitution, and of the people in adopting it? We think not. Reference to the constitutional debates will show that no word of discussion was ever addressed to the subject of personal property. All of the arguments dealt exclusively with the effect of the provision upon the "landowner" and the "money-lender." The purpose of the provision, as repeatedly stated, was to relieve the owner of "mortgaged land," or "mortgaged farm," from paying all the taxes, and at the same time to arouse an interest in the hitherto untaxed "money-lending class" by making them pay the taxes upon their mortgage security. By the constitutional debates it is established that "mortgage," as used therein, had reference to mortgages upon realty alone, an employment of the word countenanced even in legal usage, where "mortgage" is generally employed and meant to apply to the creation of liens upon real estate, while like liens upon personalty are designated "chattel mortgages." The use of the phrase "deed of trust" following had undoubted reference to those deeds of trust in common use in this state, which answer the purpose and have many of the attributes of a strict mortgage upon realty. Under the maxim of *Noscitur a sociis* it would thus appear that the remaining terms, "contract, or other obligation," were inserted to cover any and all possible contracts of lien upon realty which the ingenuity of lawyers might attempt to devise to evade the constitutional requirement;

and the belief that such is the real meaning of the section is strengthened when consideration is paid to its subsequent provisions, notably that requiring that the value of the security shall be assessed and taxed to the owner thereof in the county, city, or district in which the property affected thereby is situate. This as to real property is both an understandable and feasible scheme. Liens upon real property to be effective must be recorded in the county in which the property is situated. It is therefore quite practicable for the assessor, in making up his rolls, to determine from an inspection of the books of record in the recorder's office what deductions in favor of the owner are to be made from the assessed value, and what assessments are to be charged against the holders of liens thereon. In the case of personal property, except in the few and insignificant instances of recorded chattel mortgages, if the same rule were to be applied, it would be utterly impracticable to tax millions and millions of dollars loaned upon security of this kind. The case at bar itself presents a typical instance of this. It cannot be assessed in the county of Yolo, notwithstanding that it is a solvent credit of the bank there situate, and that the money was there loaned, because it must be assessed where the "property affected thereby"—namely, the wheat—is situate. The wheat is in the county of Contra Costa. The assessor of Contra Costa has and can have no information of the existence of the loan in some other county, and therefore cannot assess it. San Francisco is the financial center of this state. Millions of dollars are loaned upon such and like securities, and if respondent's contention of the construction of the constitution is to prevail, it must escape taxation. In short, the scheme as to personal property is so utterly impracticable that it would require the compulsion of direct mandate before a court would declare that it could ever have been designedly adopted into the constitution.

Again, when regard is had to legislative enactments touching the revenue laws and construing the constitution, it will be found that that coordinate and independent branch of government has interpreted this section of the constitution as here set forth. And while such interpretation is of course never binding upon courts, it is entitled to a certain amount of persuasive force. Thus, subdivision 3 of section 3617 of

the Political Code affords a direct legislative interpretation of the first sentence of the constitutional section in question, and reads as follows: "A mortgage, deed of trust, contract, or other obligation by which a debt is secured, *when land is pledged for the payment and discharge thereof*, shall, for the purpose of assessment and taxation, be deemed and treated as an interest in the land so pledged." And subdivision 6 declares: "The term 'credits' means those solvent debts, not secured by mortgage or trust-deed, owing to the person, firm, corporation, or association assessed."

And not alone has the legislative branch of the government thus voiced its interpretation of the constitution, but the executive department has uniformly adopted it, and it has been the universal practice of assessors to pursue the course here followed.

We conclude, therefore, that the provisions of the constitutional section under consideration have reference to land, and that the term "property" applies to land and estates therein, and does not apply to the assessment and taxation of personal property. For the foregoing reasons it follows, since credits have their *situs* at the domicile of the creditor, and are taxable at the place of his domicile (*McKay* v. *San Francisco*, 113 Cal. 392), that these credits of the Bank of Woodland, situate within the city of Woodland, were properly assessed and taxed by the municipality.

The judgment appealed from is therefore reversed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.