[Sac. No. 1655.    Department Two.—March 18, 1909.]

## BANK OF WILLOWS (a Corporation), Respondent, v. COUNTY OF GLENN, Appellant.

TAXATION—ASSESSMENT—SOLVENT CREDITS SECURED BY PERSONAL PROPERTY—REDUCTION OF DEBTS TO BONA FIDE RESIDENTS.—Under the provisions of section 1 of article XIII of the constitution and of the Political Code regulating the assessment of property for purposes of taxation, the holder of solvent credits secured by collateral security on personal property is entitled to have his assessment upon such credits reduced by the amount of his indebtedness to *bona fide* residents of the state.

ID.—CONSTITUTIONAL LAW—CONTRACTS AFFECTING REALTY.—Section 4 of article XIII of the constitution, providing that "a mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby," has exclusive reference to mortgages, deeds of trust, contracts, or other obligations affecting realty.

ID.—MORTGAGES AND DEEDS OF TRUST.—Contracts of security on personal property are not "mortgages or trust-deeds," within the meaning of those words as used in the excepting clause of section 1 of article XIII of the constitution, declaring that "the legislature may provide, except in case of credits secured by mortgage or trust-deed, for a deduction from credits of debts due to *bona fide* residents of this state."

APPEAL from a judgment of the Superior Court of Glenn County. William M. Finch, Judge.

The facts are stated in the opinion of the court.

Claude F. Purkitt, Frank Freeman, and Charles L. Donohoe, for Appellant.

Elliott McAllister, for Respondent.

HENSHAW, J.—This is an action to recover the amount of $2442.16, taxes paid under protest, and alleged to have been illegally collected by the tax-collector of the county of Glenn for state and county taxes. Certain solvent credits of the plaintiff were secured by liens on personal property. The assessor refused to make a reduction from such solvent credits of the amount of debts due from the bank to *bona fine* residents

of the state. The question presented, then, is whether the holder of solvent credits secured by collateral security on personal property is entitled to have his assessment upon such credits reduced by the amount of his indebtedness to *bona fide* residents of the state.

Section 1 of article XIII of the constitution declares as follows: "The legislature may provide, except in case of credits secured by mortgage or trust-deed, for a deduction from credits of debts due to *bona fide* residents of this state." For the information and guidance of assessors and taxpayers, the legislature proceeded to define words and phrases as used in its fiscal laws. It declared (Pol. Code, sec. 3617, subd. 3): "A mortgage, deed of trust, contract, or other obligation by which a debt is secured, when land is pledged for the payment and discharge thereof, shall, for the purpose of assessment and taxation, be deemed and treated as an interest in the land so pledged." It declared further (sec. 3617, subd. 6): "The term 'credits' means those solvent debts, not secured by mortgage or trust-deed, owing to the person, firm, corporation, or association assessed. The term 'debt' means those unsecured liabilities owing by the person, firm, corporation, or association assessed to *bona fide* residents of this state, or firms, associations or corporations doing business therein." Then in consonance with section 1 of article XIII, it declared: "In assessing solvent credits, not secured by mortgage or trust-deed, a reduction therefrom shall be made of debts due to *bona fide* residents of this state" (Pol. Code, sec. 3628), and it further declared, in specifying the duty of the assessor that, "in entering assessments containing solvent credits subject to deductions, as provided in section three thousand six hundred and twenty-eight of this code, he must enter in the proper column the value of the debts entitled to exemption and deduct the same." (Pol. Code, sec. 3650, subd. 15.) As to mortgages, the constitution in article XIII, section 4, declared that: "A mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby." Having given legislative construction to this language as above quoted from the Political Code, section 3617, subdivision 3, the legislature then declared in conformity with the constitution, that "A mortgage, deed of trust, contract, or

CLV Cal.—23

other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby." (Pol. Code, sec. 3627.)

Having thus before us the scheme of assessment provided by the legislature under the constitution we may come to the consideration of the propositions advanced by appellant in support of the assessment here made, by which assessment, it will be remembered, plaintiff was refused a deduction from its credits secured by liens on personal property of its unsecured debts due *bona fide* residents of the state.

Appellant's contentions in this regard are as we understand them, twofold:—

1. That under section 4 of article XIII of the constitution, collateral security, though but a lien on personal property, is to be considered a mortgage or a deed of trust or a contract or some other "obligation by which a debt is secured," and, therefore, should be assessed as an interest in the property affected thereby precisely as is assessed a mortgage, deed of trust, contract, or other like obligation affecting realty.

2. These contracts of security on personal property are to be construed as within the exception of section 1 of article XIII of the constitution; that is to say, they are to be held to be mortgages, or trust-deeds within the meaning of those words as used in section 1 of article XIII, and therefore the solvent credits which they secure may not be reduced by debts due to *bona fide* residents of the state.

As to the first proposition, the argument is that the language employed in the constitution in section 4 of article XIII is broad enough to include, and, therefore, should be construed to include every possible form of contract touching personal, as well as real property, by which a debt is secured. It is recognized by appellant that the decision of this court in *Bank of Woodland* v. *Pierce,* 144 Cal. 434, [77 Pac. 1012], is at variance with its contention and that the decision in that case holds, for the reasons there given, that the constitution, in the sentence quoted, was dealing exclusively with contracts affecting realty. But this difficulty appellant urges can and should be met by a reversal of the Bank of Woodland case, which reversal should be ordered, it is said, because of the extremely faulty and unsatisfactory reasoning of the case; and because it is not true, as the opinion states, that the constitutional de-

bates show that the constitutional convention was in this provision dealing with and treating exclusively of land; and also because this court was in error in stating that the legislative enactments touching this section 4 established that that co-ordinate and independent branch of government had interpreted this section as having reference exclusively to liens on land.

In support of this contention, appellant's counsel show that the definition of a mortgage is broad enough to include a mortgage on personalty, as well as realty. The code definition is cited. It is then said that when the constitution speaks of contracts or other obligations, these words are broad enough to include any contract by which personal property is pledged or a lien thereon given. But unfortunately, we are not aided by any exposition of the matter further than this. While it is said that the constitutional debates do not bear out the statement of the court, and while it is said that the legislative enactments do not show that that body construed this clause of the constitution as referring exclusively to land, we are not enlightened by anything further than these mere statements of counsel, and, according to these statements all the weight to which they are entitled, they cannot prevail against the plain evidence of the facts.

Thus as to the meaning which the framers of the constitution placed upon the first sentence of section 4 of article XIII of the constitution, a re-reading of their debates confirms the declarations in the Bank of Woodland case to the effect that the constitutional convention was dealing exclusively with liens on realty. Moreover, as originally proposed, the first sentence omitted the words "contract or other obligation," and these words were inserted by an amendment proposed by Mr. Johnson. The meaning and purpose of the amendment we have in the proponent's own language. He says, (Constitutional Debates, p. 907): "The theory is this: we all know that a mortgage is not an interest in the land under the present law, though in some states it is. But under our law it is not an interest in the land. It is merely a security, that is all. It is simply a security to the extent of the debt. Now, the committee say, for the purpose of adjusting this matter, a mortgage shall be treated as an interest in the real estate, which alters our rule. For the purposes of taxation, the mortgage shall be treated as real estate. Then there are two interests in

the real estate. One interest is the mortgage, which is held by the mortgagee, and the other is the interest of the holder and owner of the property. There are two interests. Now it is proposed to apportion those two interests so that the tax on each interest shall be according to the value of the interest. The land being the visible, tangible object, according to the theories of taxation, simply bring about this adjustment so that each interest shall pay in proportion to its value. So there is no occasion to rebate. That is the reason that in the amendment I proposed there is an exception, as far as legislative control is concerned, in regard to rebates on mortgage debts. There is the mortgage, and there is the land, and there is nothing to deduct, because the two interests constitute the entire property. That is the reason the exception was made, that the legislature shall not have power to deduct debts from credits of that character. The only difference between section 5 and the amendment is this: that the words 'contract or other obligation' are used. In convention I shall move to insert these words, if this passes, as I hope it will. In other words, besides the debt being secured by mortgage or deed of trust, I will move to insert the words, 'or other obligation.' That will bring the two sections into entire conformity, except there is an exception to railroad and other corporations." The discussion and debate is continued, and Mr. Beerstecher (p. 908), referring to section 5, itself referred to in the remarks of Mr. Johnson, says: "Section 2 expressly says that the legislature can by law provide for deductions of debts from credits. The purpose of section 5 is to oblige the men holding liens upon real estate to pay taxes on the amount they hold, and to have the owner of the land pay taxes only on the amount of his interest in the real estate." On page 909, Mr. Smith declares, "As the gentleman who has just taken his seat said, the intention is to get at and tax money represented by mortgages, trust-deeds and other contracts. That is the intention of the section, but I do not think that result will be arrived at. It is simply a roundabout way of taxing land. It distributes the payment between the owner of the land and the owner of the mortgage on the land." And so throughout the debates it will be found that such was the view of the constitutional convention without a dissenting voice, and, as has been pointed out in the remarks of Mr. Johnson, the sole object of adding

the words "contract or other obligation" was to make the language conform in meaning with the proposed section 5, or, in other words, as was said in the Bank of Woodland case, "to cover any and all possible contracts of lien upon realty which the ingenuity of lawyers might attempt to devise to evade the constitutional requirement."

*People ex rel. Burke* v. *Badlam,* 57 Cal. 594, was one of the earliest cases in which this court was called upon to construe the new fiscal laws, and it was there said: "A mortgage or trust-deed securing a debt is, under the constitution, to be deemed and treated as an interest in the property affected thereby, and assessable to the owner. The property itself is also to be assessed to its owner; but to prevent what would otherwise be double taxation, the constitution requires that, in making the assessment, the value of the security shall be deducted from the value of the encumbered property. (Art. XIII, sec. 4.) So in the case of credits, not secured by mortgage or trust-deed, the legislature may provide that there shall be deducted therefrom debts due to *bona fide* residents of the state." And that the legislative construction is in consonance with this view, would seem to the open mind to be well established by the declaration of its code enactment to the following effect: "A mortgage, deed of trust, contract or other obligation by which a debt is secured *when land is pledged* for the payment and discharge thereof, shall, for the purpose of assessment and taxation, be deemed and treated as an interest in the land so pledged." (Pol. Code, sec. 3617, subd. 3.)

2. No reason appears, therefore, for construing section 4 of article XIII otherwise than as the constitutional convention construed it, as the legislature in turn construed it, and as it has been construed by this court. But appellant next contends that if the views of the court in the Bank of Woodland case should be adhered to, so that collateral security should not be treated as an interest in the property and assessed like a mortgage upon realty, nevertheless, this court may still, and should, construe the words "mortgage or trust-deed" in the last sentence of section 1 of article XIII, as including chattel mortgages and all other contracts by which a lien on personal property is made security for a debt. In other words, this sentence should limit the right to a deduction from credits of debts due to *bona fide* residents of this state to those cases only in which

the credit is not secured by pledge or lien on either real or personal property. But, in addition to all of the reasons heretofore given which forbid such a construction, it may be conclusively shown that it would do absolute violence to the expressed constitutional intent. For it will be noted that in effect the construction contended for is equivalent to a declaration that deductions may be made from credits, provided those credits are not secured by liens on real or *personal* property. Yet this very proposition was discussed, debated, and voted down in the constitutional convention. As originally proposed, and as finally adopted, the provision read: "The legislature may provide, except in case of credits secured by mortgage or trust-deed, for a deduction from credits of debts due to *bona fide* residents of this state." Mr. Johnson offered an amendment to this which read: "Debts due *bona fide* residents of this state shall be deductible from credits not secured by real or *personal* property." (Constitutional Debates, p. 1309.) This amendment was voted down and the sentence as originally proposed adopted. (Constitutional Debates, p. 1312.) It thus appears that the framers of the constitution, with the question before them, deliberately decided to allow deductions from debts secured by liens on personal property by prohibiting deductions only in the case of debts secured by liens on real property, which liens were to be treated as an interest in the property affected, and as to which liens an entirely different scheme of taxation was declared. It follows, therefore, that the construction of the language of section 1 of article XIII for which appellant contends, is not permissible. We are in this not unmindful of the language of subdivision 6 of section 3629 of the Political Code. But this section has no reference to the duty of the assessor in making the assessment. It speaks only of the nature of the return which the taxpayer shall make. It prescribes its form. It serves to enlighten the assessor as to the condition of the taxpayer's property and enables him the better to comply with the constitutional and legislative mandates governing him in the preparation of his assessment.

For the foregoing reasons the judgment and order appealed from are affirmed.

Melvin, J., and Lorigan, J., concurred.