[L. A. No. 16375. In Bank.—August 26, 1940.]

COMMERCIAL DISCOUNT COMPANY (a Corporation), Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

Chapman & Chapman and Ward Chapman for Appellant.

Everett W. Mattoon and J. H. O'Connor, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondents.

SHENK, J.—This is an appeal from a judgment in favor of the defendants in an action to recover taxes paid under protest. The judgment was entered after a demurrer to the complaint had been sustained without leave to amend.

The plaintiff is a California corporation engaged in the business of lending money to finance the purchase and sale of automobiles. On March 4, 1936, it owned solvent credits in the admitted sum of $3,666,322.76 and had other obligations owing to it in the sum of $1,611,967.24, which were secured by trust receipts. The defendant county assessor assessed all these credits to the plaintiff as solvent credits. The plaintiff paid the tax on the total amount, but under protest as to the portion secured by the trust receipts. It filed its verified claim for a refund of that portion of the

tax which amounted to $1611.96. The defendants refused to make the refund and this action followed.

The question is whether the obligations owned by the plaintiff, secured by the trust receipts, and on which the disputed tax was paid, were taxable as solvent credits. It is conceded that if they were solvent credits they were subject to taxation.

It is the contention of the plaintiff that said obligations were not solvent credits and were therefore relieved from taxation under applicable constitutional and statutory provisions in effect at the time. In this connection it is urged that the ''property'' which the assessor included in the disputed assessment as ''solvent credits'' was the trust receipts owned by it; that those trust receipts were ''notes'' or ''mortgages'' and, as such, were relieved from the burden of taxation upon the adoption of the Personal Income Tax Act of 1935 (Stats. 1935, p. 1090), and the amendment of section 3627a of the Political Code in the same year. (Stats. 1935, p. 2251.)

It is the contention of the defendants that the property which the assessor assessed as solvent credits was the oral promises or parol obligations of automobile dealers to pay money to the plaintiff, which were secured by the trust receipts, and that even if the trust receipts were the property so assessed they were neither notes nor mortgages relieved from taxation as contemplated by law.

The Constitution (sec. 1, art. XIII) provides that ''all property in the state, except as otherwise in this Constitution provided . . . shall be taxed . . . '' The word ''property'' is declared to include ''moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership''.

By amendment in 1933, section 14 of article XIII of the Constitution made important changes in the matter of the taxation of personal property. That section contains the following: ''The legislature shall have the power to provide for the assessment, levy and collection of taxes upon all forms of tangible personal property, all notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, mortgages, and any legal or equitable interest therein, not exempt from taxation under the provisions of this Constitution, in such manner and at such rates, as may be provided by law,

. . . and may exempt entirely from taxation any or all forms, types or classes of personal property.''

In 1935, the legislature amended section 3627a of the Political Code to read, in part, as follows: ''Notes, debentures, shares of capital stock, bonds, deeds of trust, mortgages, and any legal or equitable interest therein, of the classes taxable to the owner thereof under the provisions of section 14 of article XIII of the Constitution of this state, are hereby taxed upon their actual value at the rate of two-tenths of one per cent. Solvent credits, of the class taxable to the owner thereof, under the provisions of section 14 of article XIII of said Constitution are hereby taxed upon their actual value at the rate of one-tenth of one per cent. The property aforesaid, except solvent credits, shall no longer be taxable under the provisions of this section if and when a net income tax shall be passed or adopted in this state. Upon the passage or adoption of such tax and from the time such income tax becomes effective such income tax shall be in lieu of the tax herein provided for upon notes, debentures, shares of capital stock, bonds, deeds of trust, mortgages and any legal or equitable interest therein.''

Basing its argument, for the main part, on the foregoing constitutional and statutory law in effect at the time the disputed assessment was made, the plaintiff contends that the property assessed was the trust receipts which were either ''notes'' or ''mortgages'' and therefore relieved from taxation, although taxed under the name of ''solvent credits''.

It becomes necessary to examine the nature and terms of the trust receipts, a copy of which is attached to the complaint and made a part thereof. It is readily apparent that those trust receipts were prepared for use and were used pursuant to The Uniform Trust Receipts Law as originally passed in 1935. (Stats. 1935, p. 1930; secs. 3012 to 3016.16, inclusive, Civ. Code.) Under this law a trust receipt was given by the automobile dealer, called the trustee, to the plaintiff, called the entruster, to secure repayment by the dealer of money loaned to him by the plaintiff, which money enabled the dealer to pay for automobiles purchased from the manufacturer or distributor. The trust receipt recites that the trustee holds in trust for the entruster, as security for payment on demand of a stated amount, certain described motor vehicles in which ''a security interest remains in or is hereby transferred to entruster as security for the pay-

ment of the sums mentioned herein, together with interest and charges thereon from date hereof as agreed''. The trustee agrees to hold the motor vehicle in trust as the property of the entruster for the purpose of sale or exchange. The trustee is prohibited from lending, renting, mortgaging, pledging, encumbering, operating, using or demonstrating any of the motor vehicles, but may sell any of them for cash or on terms approved by the entruster and for amounts not less than the amounts due it, the cash and other considerations received to be paid to the entruster. The entruster is given the right to repossess any or all of the motor vehicles upon default by the trustee and to sell them after specified notice of intention to sell. The trust receipt provides that ''The proceeds of any such sale or sales shall be applied, first, to payment of the expenses thereof; second, to the payment of the expenses of retaking, keeping and storing said motor vehicle or vehicles including a reasonable attorney's fee; and, third, to the satisfaction of the trustee's indebtedness hereby secured. The trustee shall receive any surplus and shall pay unto entruster upon demand any deficiency. . . . In the event of default by the trustee in the payment of any moneys hereunder due on the due date hereof, entruster may declare all moneys secured immediately due and payable. In event of such default entruster may at his option and in lieu of sale as hereinabove provided declare a forfeiture of the trustee's interest in any or all of said motor vehicles against cancellation of the then remaining indebtedness against said motor vehicle or motor vehicles in accordance with the provisions of section 3016.2 of the Civil Code of the state of California. No waiver of any existing default shall be deemed to waive any subsequent default and all rights hereunder are cumulative and not alternative.''

It is clear that a trust receipt authorized by the Uniform Trust Receipts Law and briefly above described cannot be classified as a note. It contains nothing that may be construed as an unconditional promise to pay a sum certain in money as contemplated by section 3082 of the Civil Code. The uniform law under which the trust receipts were prepared was intended to authorize a method of securing a debt and not of creating a debt. There is nothing in the law which would prevent the execution of a promissory note or notes representing the amounts secured by the trust receipts. It does not appear that the plaintiff took notes from

the automobile dealers for that purpose and the case is presented on the theory that the obligations to repay the money loaned rested in parol. Promissory notes in the same amounts named in the trust receipts were taken by the lender in the transactions involved in *Chichester* v. *Commercial Credit Co.,* 37 Cal. App. (2d) 439 [99 Pac. (2d) 1083].

It is then to be considered whether the trust receipts were "mortgages" as contemplated by section 3627a of the Political Code, and as such relieved from taxation upon the adoption of the Personal Income Tax Act of 1935. Much argument is addressed to this question, the plaintiff contending that said trust receipts are chattel mortgages in substance and effect; that the lien on the automobiles described in said receipts is in the nature of a chattel mortgage lien, and that therefore the court should declare that they be classified as mortgages relieved from taxation. There is nothing in the law authorizing the issuance of such receipts that would indicate that they were intended to operate as mortgages on personal property authorized by sections 2955 to 2978, inclusive, of the Civil Code. It is not contended that said receipts were executed with the formality required by those sections, but it is insisted that the trust receipts lien is similar to a chattel mortgage lien and should be held to be effective as such between the parties, notwithstanding the informality of their execution. There are many cases in the United States dealing with the effect of trust receipts. In *In re Boswell,* (Sept., 1937) 20 Fed. Supp. 748 (affirmed 96 Fed. (2d) 239), it was said of a trust receipt that "credit and financial agencies of present-day activities associate it with a security instrumentality that resembles a pledge, a chattel mortgage, or a conditional sale contract, but which is exactly none of these mediums of trade and credit". In *In re Fountain, Inc.,* (July, 1922) 282 Fed. 816 [25 A. L. R. 319], referring to the nature of a trust receipt, it was said: "This arrangement seems more nearly to resemble a chattel mortgage than any other form of security." (See, also, cases cited and discussed in 49 A. L. R. 283; 87 A. L. R. 305; 101 A. L. R. 453; *In re James, Inc.,* 30 Fed. (2d) 555; article on Trust Receipt as Security, 22 Columbia Law Review, 395.)

In *Chichester* v. *Commercial Credit Company, supra,* the plaintiff sought to have it established that trust receipts issued under the Uniform Trust Receipts Law were chattel mortgages. The court properly refused to so hold and pointed

out some of the distinguishing characteristics between such security interest documents and chattel mortgages. Other differences might be noted. In the case of a chattel mortgage title is found in the mortgagee prior to the mortgage. But the chapter on trust receipts, and particularly section 3014 of the Civil Code, found therein, provides: "The security interest of the entruster may be derived from the trustee or from any other person, and by pledge or by transfer of title or otherwise."

It was the obvious intention of the legislature in adopting the Uniform Trust Receipts Act to permit the transactions thereunder to be uncontrolled by the recordation requirements and other formalities of the chattel mortgage law. To lay down a general rule to the effect that a trust receipt is a chattel mortgage would be in effect to nullify the trust receipts law. Each instrument is issued under its own statutory authority. Each is covered by its own chapter in the Civil Code, and while in theory each has some of the characteristics of the other, they are not the same instrument in law. In other words, each is a thing in and of itself and must be considered as such. To declare a trust receipt a chattel mortgage for the purposes of taxation and not to be a chattel mortgage for purposes of trade and commerce would be unjustifiable and result in great confusion.

The defendants also take the position that even if these trust receipts be classified as chattel mortgages, they are not such mortgages as are relieved from the burden of taxation under the Constitution and the statutes. They call attention to the fact that the term "mortgage", used in the excepting clause of section 1 of article XIII of the Constitution declaring that "The legislature may provide, except in the case of credits secured by mortgage or trust deed, for a deduction from credits of debts due to *bona fide* residents of this state," was incorporated in the original section and was reenacted in the amendments of 1894, 1910 and 1914; and that the same term used in section 4, article XIII, prior to the repeal of that section in 1910, had exclusive reference to mortgages affecting real property. (*Bank of Willows* v. *County of Glenn,* 155 Cal. 352 [101 Pac. 13].) And it is argued that the term "Mortgage" as first employed in the definition of "credits" in section 3617 of the Political Code in 1880 (amendment to codes, 1880, p. 5), and in subsequent amendments of the same section, should have the same exclusive

reference to mortgages on real property. ▮ The argument is persuasive; but it is unnecessary to further explore the constitutional and statutory history of the use and significance of the term "mortgage" for purposes of taxation, in view of the conclusion that in any event a trust receipt is neither a note nor a chattel mortgage and that the parol obligation secured thereby is not relieved from taxation by the provisions of section 3627a of the Political Code.

The judgment is affirmed.

Carter, J., Edmonds, J., Spence, J., *pro tem.*, McComb, J., *pro tem.*, and Gibson, C. J., concurred.