### In re K. MARKS & CO.

(Circuit Court of Appeals, Second Circuit. March 9, 1915.)

No. 198.

1. BANKRUPTCY ⬳140—IMPORTATIONS UNDER LETTERS OF CREDIT—RIGHTS OF BANKERS ISSUING LETTER OF CREDIT.

A firm which became bankrupt was engaged in importing merchandise under a system whereby London bankers issued a letter of credit to the seller of the merchandise for the price thereof; the bill of lading, with the shipper's invoice and the consular invoice, being sent to the banker's agents, who delivered them to the bankrupts in exchange for a trust receipt, the remaining bills of lading being forwarded to the bankers, accompanied by a draft, which they accepted. By the application for the credit, the bankrupts bound themselves to furnish the bankers funds to meet the draft at maturity, and admitted and guaranteed the bankers' ownership of the merchandise or the proceeds thereof, and their right to the possession thereof, and to retake possession, if the merchandise should be intrusted to the bankrupts for sale or otherwise. By the trust receipt they agreed to hold the merchandise as the property of the bankers, with liberty to sell it for their account and to deliver the avails to the bankers' agent until their obligations to the bankers had been discharged, and to store and insure the merchandise, delivering the storage and insurance papers to the bankers' agents. *Held,* that it was the intention that title to the goods should remain in the bankers until they were reimbursed for paying the price to the seller, and they had at all times the right to

retake the goods or their proceeds, and the transaction did not constitute a chattel mortgage, void as to creditors, because not filed as required by the state law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ☞140.]

2. BANKRUPTCY ☞140—IMPORTATIONS UNDER LETTERS OF CREDIT—RIGHTS OF BANKERS ISSUING LETTER OF CREDIT.

That the bankers occasionally delivered the shipping documents to the bankrupts before they received the trust receipt, or failed to insist upon immediate payment of the proceeds when the goods were sold, or to insist upon receiving the storage and insurance papers, was not an abandonment of their title or a waiver of their rights.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ☞140.]

3. BANKRUPTCY ☞140—IMPORTATIONS UNDER LETTERS OF CREDIT—RIGHTS OF BANKERS ISSUING LETTER OF CREDIT.

That with respect to one shipment the shipping documents were delivered through mistake or otherwise to the bankrupts, instead of the bankers' agents, and the bankers never received a trust receipt therefor, did not defeat their rights, as the application for credit alone was sufficient to protect their rights.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ☞140.]

4. BANKRUPTCY ☞155—IMPORTATIONS UNDER LETTERS OF CREDIT—RIGHTS OF BANKERS ISSUING LETTER OF CREDIT.

Where upon the bankruptcy of the importers the bankers were unable to trace into the hands of the trustee the proceeds of sales of certain of the merchandise, they were not entitled to have a similar amount paid them from the estate, under the rule that, where a person has under his control a fund whereof a portion belongs to him and a portion is held by him in trust, withdrawals by him from the fund will be charged against the portion belonging to him, as, while this rule applies to a single bank account or a separate fund, it could not be applied to the whole estate of the bankrupts, especially as the estate might be largely constituted of the proceeds of sales of goods covered by trust receipts belonging to other parties.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞155.]

Appeal from the District Court of the United States for the Southern District of New York.

Charles T. B. Rowe, of New York City (Edmund L. Mooney and Emanuel Eschwege, both of New York City, of counsel), for appellant.

Bigelow & Wise, of New York City (H. A. Wise, of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is a reclamation proceeding by Smith & Schipper, agents of William Brandt's Sons & Co., bankers of London, for certain goods and proceeds of goods and uncollected accounts for sale of goods in the hands of the trustee in bankruptcy of K. Marks & Co. K. Marks & Co. were a firm of this city engaged in the importation of edibles from Europe. To raise the funds to pay for the same they followed the familiar system whereby bankers give a merchant here purchasing goods in foreign countries credit against the shipping documents and deliver the latter to him on or prior to their arrival in this

country against his trust receipts. Business to the extent of many millions of dollars is annually done at this port in this way.

The course of dealing between these parties was as follows: K. Marks & Co. signed an application to Brandt's Sons & Co., through Smith & Schipper, in the following form:

Messrs. Wm. Brandt's Sons & Co., London, per Messrs. Smith & Schipper, 138 Front Street, New York—Gentlemen: We hereby beg leave to open by mail/cable with you confirmed/unconfirmed credit for the amount of £.....................

..............................................................................

in favor of...........................................................................

to be availed of by drafts on you at.....................................

for cost of..........................................................................

Bills of lading to be made out to order and shipments completed by.........

Drafts to be drawn and negotiated on or before...........................

　The marine insurance will be taken out by us.

One bill of lading, indorsed in blank, shipper's invoice and consular invoice, together with copy of advice of drafts drawn against this credit, are to be sent by the shippers forthwith to your agents, Messrs. Smith & Schipper, New York. Duplicate bills of lading and invoices are to be attached to the drafts.

In consideration of your opening the above credit, we hereby bind ourselves to furnish you with funds to meet the said drafts at the maturity thereof, in cash or in bills of exchange satisfactory to you and which we hereby guarantee, together with all expenses incurred and a commission of　　　per cent. on all drafts drawn or accepted by you.

We hereby recognize, admit, and guarantee your ownership of the merchandise, or the proceeds thereof, represented by the bills of lading aforesaid, and your right and the right of your agents, Messrs. Smith & Schipper, to the possession and disposal of said merchandise and proceeds and of the bills of lading and policies of insurance covering the same, until such time as any and all indebtedness liability and obligation existing in your favor as against us under said credit or otherwise shall have been paid, discharged and fulfilled. In the event that the said merchandise, or the documents therefor, shall be intrusted to us for the purpose of sale or otherwise, we hereby consent that your right to repossess yourselves of the same or the proceeds thereof shall be exercised at any time in your or your said agents' discretion.

It is understood and agreed that you shall not be held responsible for the correctness or validity of the documents representing shipment or shipments, nor for the description, quantities, or quality of the merchandise declared therein, and, further, that the liability and obligation created hereunder are additional to any security, lien, or advantage which you may have, or which will or would otherwise arise or be implied from the course of business between us, and, finally, that this agreement is to continue in force, notwithstanding any change in the composition of our firm.

Smith & Schipper forwarded this application to Brandt's Sons & Co. in London, who, if they approved it, issued a letter of credit to the seller of the goods for the price in the following form:

Wm. Brandt's Sons & Co.
Letter of Credit.

No.　　　　　　　　　　　　　　　　　　　　　　　　London.

"We hereby authorize
to value on us at　　　　　　　　　　　　　　　　for account of
　　　　　　　　　　　　　　　　for any sum or sums not exceeding

Marine insurance is covered
Bills of lading to be made out to
Shipments to be completed

One bill of lading indorsed in blank and consular invoice, together with a copy of respective advice of drafts drawn against this credit, are to be sent direct by the shippers for our account to Messrs. Smith & Schipper, 138 Front Street, New York.

The bills must be drawn latest by
and be accompanied by remaining bills of lading,
invoice copies                                    which are to be delivered
up to us on acceptance.

And we hereby agree with the drawers, indorsers, and bona fide holders of the bills drawn in compliance with the terms of this credit that the same shall be duly honored on presentation at our counting house.

All bills to be marked as drawn under Credit No.
dated                                    and to be written off on the back hereof.
£          Sterling.

Thereupon the seller shipped the goods and forwarded the bill of lading, together with the invoice and consular invoice, to Smith & Schipper, and drew a draft, accompanied by the remaining bills of lading, for the price on Brandt's Sons & Co., who accepted the same. On the arrival of the shipping documents Smith & Schipper delivered them to K. Marks & Co. against a trust receipt in the following form:

Trust Receipt                          No.

New York.....................................................................
Received from Messrs. Wm. Brandt's Sons & Co., bankers, through their agents, Messrs. Smith & Schipper, New York, the following merchandise, their property, specified in the bill of lading per S/S...............................
shipped by...................................................whose draft against same for £................................has been accepted for our account by said bankers as due in London.......................................under their letter of credit No...........................................and in consideration thereof we hereby agree to hold the said merchandise as the property of the bankers above named, with liberty to sell the same for their account, and, in the event of the sale of the said merchandise or any part thereof, to hand the avails as soon as received to Messrs. Smith & Schipper, their agents, until our obligations under the above credit and all other our obligations and indebtedness to the said bankers shall have been discharged and paid.

We further agree, pending a sale, to store the said merchandise and fully to insure the same against fire (loss, if any, payable to Messrs. Smith & Schipper, agents as aforesaid), and to pay storage, insurance and all other charges and expenses which may be incurred in respect thereto; storage and insurance papers to be handed to Messrs. Smith & Schipper.

It is also understood and agreed that the said bankers, or their agents, Messrs. Smith & Schipper, may at any time cancel this arrangement and repossess themselves of the said merchandise or the avails thereof, wheresoever and in whatsoever condition their said property may then be found, and in the event of our suspension, failure or assignment for benefit of creditors, or of the nonpayment of any indebtedness or nonfulfillment of any obligation of ours to the said bankers or their agents, whether arising under the said credit or otherwise, then all obligations, acceptances, indebtedness and liabilities whatsoever shall thereupon, without notice, mature and become due and payable forthwith.

The intention of this arrangement is to protect and preserve unimpaired the right, title, and interest of the said bankers in and to the said merchandise and the avails thereof, as above declared, until we shall have fulfilled our obligations to them, whether arising under credit agreements or otherwise, whereupon the trusts hereby created shall cease and terminate.

Documents delivered:
    Bills of lading,
    Consular invoice,
    Commercial invoice,
    Insurance certificate.

This course of business had continued between K. Marks & Co. and Smith & Schipper for several years. The latter never insisted upon

immediate payment of the proceeds of sale of the goods, nor upon delivery of storage and insurance papers; their concern being to be put in funds in time to meet the acceptance of Brandt's Sons & Co. when due in London.

[1, 2] The trustee contends that these documents and the conduct of the parties constituted a chattel mortgage upon the goods, which was void as to creditors because not filed as required by the Lien Law of New York. He regards the whole thing as a sham. We do not concur in this view at all. The plain intention of the parties was that title to the goods should remain in the bankers until they were reimbursed for paying the price of them to the seller. They had at all times the right to retake the goods from the merchant or their proceeds if they could be traced. The fact that the bankers occasionally delivered the shipping documents before they received the trust receipt, or that they failed to insist upon immediate payment of the proceeds when the goods were sold, or did not insist upon receiving the storage and insurance papers, we do not regard as an abandonment of their title or a waiver of their rights under the trust receipt. The subject has been so fully considered, both in this circuit and in the Third Circuit, that we shall do no more than refer to the decisions. Charavay & Bodvin Co. v. York Silk Co. (C. C.) 170 Fed. 819; In re Cattus, 183 Fed. 733, 106 C. C. A. 171; Century Throwing Co. v. Muller, 197 Fed. 252, 116 C. C. A. 614; In re Killian Mfg. Co. (D. C.) 209 Fed. 498; Assets Realization Co. v. Bank, 210 Fed. 156, 126 C. C. A. 662.

[3] There was one shipment of pimentos arriving by steamship St. Laurent immediately before the proceedings in bankruptcy were begun, the documents of which were delivered through either the fault or the mistake of the shipper to K. Marks & Co., instead of to Smith & Schipper. For these goods no trust receipt was ever delivered to Brandt's Sons & Co., but we agree with Judge Hough that the application for the credit alone is sufficient to protect the banker's rights.

[4] The trustee admits that goods in specie, or their proceeds, or uncollected accounts due for them, have been traced into his hands, as claimed by the petitioners, except in the case of negotiable paper to the amount of $1,500, which the special master and District Court ordered to be turned over to the petitioners, and also in case of the proceeds of goods sold, paid by one of the partners of K. Marks & Co. to the receiver in the amount of $13,082.29. The theory of the special master as to the negotiable paper is that, K. Marks & Co. having spent the proceeds of sale of goods covered by trust receipts to this amount, it must be presumed that a similar amount belonging to the petitioner remains in the estate. On this point he says:

"There is no evidence to indicate that the items remaining on the debit side, viz., August 5th, $404.81, August 10th, $1,735.98, August 26th, $328.86, did not represent sales of merchandise belonging to the bankrupts; wherefore petitioners claim that the cash payments, collected by the bankrupts and dissipated, were payments for the bankrupts' own merchandise, and are chargeable thereagainst, and that the unpaid notes in the hands of the receiver are applicable pro tanto to the debit items representing merchandise delivered by the petitioners to the bankrupts under trust receipts as aforesaid. For this proposition, the petitioners invoke the well-settled rule of law that, where a person has under his control a fund whereof a portion belongs to him

and a portion is held by him in trust, withdrawals by him from this fund will he charged against the portion of the fund belonging to him, and when such withdrawals exceed the amount of his personal share of the fund, all the balance of the fund, if any, is charged with the trust; this on the theory that no one is presumed to do a wrongful act. * * * The principle of law which I have followed in allowing the petitioners to trace their property into the hands of the receiver (whether it consists of merchandise or proceeds represented either by money or bills receivable or notes) is as follows: The modern rule applicable to all kinds of trust funds is that if the proceeds of such sales of the principal's goods have swelled the funds coming to the receiver in bankruptcy, and such funds have at all times equaled or exceeded the amount due to the principal, equity will follow the goods into their proceeds and decree his reimbursement. In re Northrup [D. C.] 152 Fed. 763; In re Kurtz [D. C.] 125 Fed. 992."

The above reasoning applies to a single bank account or a separate fund, but not to the whole estate of the bankrupts, especially where it may be largely constituted of the proceeds of sale of goods covered by trust receipts belonging to other parties. The award of $1,500 negotiable paper will be disallowed.

In respect to the sum of $13.082.29, Elkan B. Marks, one of the partners, collected the proceeds of sale of goods recovered by the petitioner's trust receipts to this amount and left the city with it in his possession shortly before the bankruptcy proceedings were instituted. After an absence of several weeks, he returned and paid these moneys over to the receiver. Counsel for the trustee contends that the testimony of this witness as to his intentions and his doings in the meantime is wholly incredible. It certainly cannot be believed in its entirety. Yet the special master and District Judge did believe it so far as this particular transaction is concerned, and we do not differ with them.

The order of the District Court, modified by striking out the award of $1,500 of negotiable paper, is affirmed.