[S. F. No. 10332. In Bank.—July 30, 1924.]

## JOSEPH ARENA, Appellant, v. BANK OF ITALY et al., Respondents.

[1] ATTACHMENT—THIRD-PARTY CLAIM—RELEASE.—Under section 689 of the Code of Civil Procedure, the right of an officer levying a writ of attachment or execution, in an action at law, to demand and receive an indemnifying undertaking from the plaintiff, as a condition of retaining the property levied upon, depends upon and can only be set in motion by the presentation of a written and verified claim by a third party claiming such property as his own, and setting out his right to the possession thereof.

[2] ID.—INSUFFICIENT CLAIM—OWNERSHIP—SECURITY.—A third-party claim of goods under attachment, alleging as the basis of the claim an assignment of the property to the claimant as security for the payment of a promissory note, is insufficient.

[3] ID.—SECTIONS 2888 AND 2924, CIVIL CODE—LIEN.—Under sections 2888 and 2924 of the Civil Code the utmost right of property of the claimant in such case by virtue of the assignment would be a lien upon the property.

[4] ID.— ASSIGNMENT OF PERSONAL PROPERTY — SECURITY — LIENS.— There are only two forms of lien which under our law can be created by an assignment of personal property as security for a debt, to wit, a pledge and a mortgage; and as to the lien of a pledge, it is dependent on possession, and in case possession has been taken by the creditor under such form of transfer, the voluntary restoration to the owner extinguishes the lien, unless otherwise agreed by the parties, and it extinguishes it, notwithstanding any such agreement, as to creditors of the owner and persons sub-

---

1. See 15 **Cal. Jur.** 1056.
4. See 16 **Cal. Jur.** 332; 21 **R. C. L.** 655.

sequently acquiring a title to the property, or a lien thereon, in good faith and for value.

[5] ID.—MORTGAGE OF PERSONAL PROPERTY—POSSESSION—CREDITORS.— A mortgage of personal property not only does not entitle the mortgagee to possession unless so authorized by the express terms of the mortgage, but is void as against creditors of the mortgagor, unless executed with the formalities required by section 2957 of the Civil Code.

[6] ID.—TRANSFER OF PERSONAL PROPERTY—SECTION 3440, CIVIL CODE. Under section 3440 of the Civil Code every transfer of personal property, with certain enumerated exceptions, and every lien thereon other than a mortgage, when allowed by law, is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession.

[7] ID.—THIRD-PARTY CLAIM—RIGHT OF POSSESSION.—A third-party claim required by section 689 of the Code of Civil Procedure must set out the claimant's right of possession of the property, and where it fails to do so it furnishes no basis for the attaching officer to demand an indemnifying undertaking or to justify him in releasing the attached property if the bond is not given.

[8] ID.—DEFECTIVE THIRD-PARTY CLAIM — AMENDMENT—DEMAND—RE-LEASE.—Where the original third-party claim of ownership of property under attachment was fatally defective, an amended claim, even if sufficient in form, would not give any validity to the sheriff's void act in demanding, pursuant to the original claim, an indemnifying bond from the plaintiff; and his release of the property, upon the filing of the amended claim, without notice to the plaintiff or a new demand for an indemnifying bond, was unauthorized and illegal.

[9] ID. — PLEADING — SUFFICIENCY OF COMPLAINT.—In an action for damages for the wrongful release of attached property, the complaint is sufficient in its averments of ownership of the attached property in one of the defendants at the time of such attachment, as against a general demurrer, where it avers that the writ of attachment directed to the sheriff required him to attach and safely keep all the property of the defendant named, and that pursuant to said writ of attachment the other defendant, as

5.  See 5 Cal. Jur. 41; 5 R. C. L. 387.
6.  See 12 Cal. Jur. 992.
7.  See 15 Cal. Jur. 1058.

sheriff, duly levied upon, attached, and took into his custody certain goods, wares, and merchandise belonging to the first defendant, describing the property so taken.

[10] Id.—Special Demurrer—Lack of Prejudice.—In such a case, prejudicial error cannot be predicated upon the overruling of a special demurrer, to the effect that the complaint was uncertain in not showing how or in what manner the goods attached belonged to the named defendant, where the record shows that the defendants were in nowise misled thereby, but were at all times fully advised as to what the rights of ownership of said defendant were in the property, and the court found that at the time of the levy of the attachment said defendant was the owner and in the exclusive possession and control of the property.

[11] Id.—Pleading—Demand.—The contention that the complaint in such case does not sufficiently aver that no demand was made upon the plaintiff by the sheriff for an indemnity undertaking after the presentation to him of the amended claim cannot be sustained where the complaint avers that the sheriff released the property without giving any notice to the plaintiff as to the filing of said amended claim, the evidence sufficiently shows that no such second demand was ever made, and the trial court, following the averment of the complaint, expressly finds that the sheriff released the property in question without any notice to plaintiff of the filing of said amended affidavit.

[12] Id.—Ordering Judgment on Appeal.—In this action it is held that it is a proper case for the court on appeal, in reversing the judgment of the trial court, to order that court to enter judgment in favor of the plaintiff on the findings.

[13] Id.—Claim of Ownership—Void Assignment—Trust Receipts. In such a case, where it appears that the debtor prior to a certain date was the owner and in possession of the property in question, that he made an assignment of the same to the third party claimant as security for an indebtedness and delivered the same to it as a pledge with said assignment, that thereafter the latter restored the possession to the debtor, thus destroying said pledge, that it then took from the debtor trust receipts, leaving the latter in full possession and control of said property, the claim of ownership is void upon its face as against creditors, being violative of section 3440 of the Civil Code. (Opinion on denial of rehearing.)

[14] Id.—Liability of Third-Party Claimant—The third-party claimant in such case being a coactor with its codefendant, the sheriff, in procuring an unlawful release of the property in question from the lien of the attachment and the delivery thereof to

itself, is liable for whatever damages the plaintiff sustained from the conversion of said property accomplished thereby. (Opinion on denial of rehearing.)

---

(1) 6 C. J., p. 386, sec. 863.   (2) 6 C. J., p. 376, sec. 832.   (3) 6 C. J., p. 376, sec. 832.   (4) 31 Cyc., pp. 799, 817, 818, 819.   (5) 11 C. J., pp. 476, 551, secs. 110, 247.   (6) 27 C. J., pp. 463, 577, secs. 103, 297.   (7) 6 C. J., pp. 383, 386, secs. 853, 863.   (8) 6 C. J., p. 386, sec. 863.   (9) 6 C. J., p. 386, sec. 863.   (10) 4 C. J., p. 935, sec. 2909.   (11) 4 C. J., p. 935, sec. 2909.   (12) 4 C. J., p. 1185, sec. 3223.   (13) 6 C. J., p. 375, sec. 832.   (14) 6 C. J., p. 386, sec. 963.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Reversed.

The facts are stated in the opinion of the court.

A. P. Dessouslavy for Appellant.

Louis Ferrari for Respondents.

Morrison, Dunne & Brobeck and H. A. Judy, for California Bankers Association, *Amici Curiae.*

RICHARDS, J.—This appeal is from a judgment in the defendants' favor in an action instituted by the plaintiff to recover damages arising from the alleged wrongful release of an attachment. The facts, as shown upon the trial and found by the trial court, in so far as they are necessary to a decision of this cause, are the following: For some time prior to July 22, 1919, one Luigi Dellaira had been doing business under the name of "California Grape Association" and under that name had come into the possession of certain merchandise consisting of 204 barrels of olives, 11 crates of empty half-gallon cans, 349 cases of tomato puree, and 72 cases of Grinola oil, which said merchandise was of the value of about $8,000 and was on said above date situate in certain premises on Front Street, in San Francisco, which, prior to and at said date, were rented and occupied by said Luigi Dellaira and constituted his store and salesroom while doing business under said name; that on July 22, 1919, the plaintiff in this action commenced an action against said Luigi Dellaira, under both names, to recover upon an alleged in-

debtedness of $3,328.83, and on said date procured a writ of
attachment proper in form to be issued directing the sheriff of
the city and county of San Francisco to attach the said prop-
erty of said Dellaira to cover and secure said claim; that pur-
suant to said writ the said sheriff did duly levy upon, attach,
and take into his possession the aforesaid merchandise; that
on said July 22, 1919, and while the said sheriff so held
the said property and the whole thereof under said attach-
ment the Bank of Italy presented to and served upon the
said sheriff its third-party claim to the whole of said prop-
erty together with its demand for the release thereof, sup-
ported by the affidavit of one of its officers, wherein was
set forth the corporate character of said bank, the authority
of its said official to make said affidavit, the fact of the
levy of said attachment, the description of said property
and its location and which affidavit then proceeded to state:
"That the following goods in said store are the property of
the Bank of Italy, viz.: 204 Barrels of Olives; 11 crates of
empty half gallon cans; 349 cases of Tomato puree; 26 cases
of Tomato oil; 46 cases of Grinola oil; . . . that said goods
hereinabove described are of the value of about Thirty Thou-
sand ($30,000) Dollars; that the Bank of Italy became owner
of said goods by an assignment given by the defendant L.
Dellaira and the defendant California Grape Association
to the said Bank of Italy to secure the payment of a promis-
sory note in the sum of Thirty Thousand ($30,000) Dollars."
That upon receiving said third-party claim the said sheriff
notified the plaintiff thereof and demanded that said plain-
tiff indemnify the said sheriff against said claim; that upon
receiving such notice and demand the plaintiff did not file or
appear to file any indemnifying bond, but did immediately
notify said sheriff in writing that said claim was invalid
and insufficient for the reason that it affirmatively showed
upon its face that said Bank of Italy had no ownership of or
right to the possession of said attached property, and in so
doing directed the attention of the sheriff to certain sections
of the codes and to certain decisions of this court which
were cited as sustaining the plaintiff's contention as to the
invalidity on its face of said claim. Thereupon, and on
July 24, 1919, the Bank of Italy filed with the said sheriff
an amended affidavit in support of its said claim wherein
it undertook to set forth as the source and foundation of its

title and claim to said property certain transactions between itself and said Dellaira antedating said attachment and which may be briefly stated as follows: That on and prior to June 4, 1919, the said merchandise had been pledged by said Dellaira to said bank to secure a certain indebtedness due by him to it but that on said June 4, 1919, the said bank, pursuant to certain agreements then entered into between himself and it, had permitted the said Dellaira to take and have the possession of said merchandise and to remove the same from the warehouse wherein said merchandise had been stored pursuant to said pledge and to take the same to his said premises on Front Street in order to sell and dispose of the same; that the arrangement under which the said Dellaira was thus given possession of said merchandise was embodied in certain so-called "Trust receipts," which were set forth in full in said amended affidavit and which, in substance, provided that said merchandise was the property of said Bank of Italy and that said Dellaira agreed to take and hold said goods in trust for said bank and as its property and with liberty to sell the same for its account, but with the right in the Bank of Italy at any time to cancel the trust and take possession of the goods and of the proceeds thereof. Upon receiving this amended affidavit and claim the sheriff released said goods without any further demand upon the said plaintiff for an indemnifying bond and without any further notification other than a telephone message to the attorney for the plaintiff to the effect that the said sheriff had received said amended affidavit and was on his way to release said property, which he immediately proceeded to do. Thereupon the plaintiff, after demanding of the Bank of Italy and of the sheriff redelivery of said property to said sheriff, and after their refusal to comply with such demand, and after prosecuting his action against said Dellaira to judgment and vainly attempting to satisfy an execution issued thereon, commenced the present action. The trial court, upon its findings of the foregoing facts, gave its judgment in the defendants' favor, whereupon the plaintiff took and prosecutes this appeal.

The primary question presented for our determination relates to the sufficiency of the third-party claim presented to the attaching officer in its original form by the Bank of Italy as forming a basis for the demand made by such officer

upon the plaintiff for an indemnifying bond under the provisions of section 689 of the Code of Civil Procedure.   Said section reads as follows:

"If the property levied on is claimed by a third person as his property by a written claim verified by his oath or that of his agent, setting out his right to the possession thereof, and served upon the sheriff, the sheriff is not bound to keep the property unless the plaintiff, or the person in whose favor the writ of execution runs, on demand, indemnifies the sheriff against such claim by an undertaking by at least two good and sufficient sureties in a sum equal to double the value of the property levied on; and the sheriff is not liable for damages for the taking or keeping of such property to any such third person, unless such a claim is made."

[1] By virtue of the provisions of section 549 of the Code of Civil Procedure this section is made applicable to attachment proceedings. It would appear from the language of the above-quoted section, and from the fact of its insertion in the Code of Civil Procedure in the title in which it appears, that the right of an officer levying a writ of attachment or execution in an action at law to demand and receive an indemnifying undertaking from the plaintiff in such action as a condition of retaining the property levied upon by virtue of such writ depends upon and can only be set in motion by the presentation of a written and verified claim by the third party claiming such property as his property and setting out his right to the possession thereof. Prior to the adoption of the Code of Civil Procedure the Practice Act provided that when property levied upon was claimed by a third person as his property the sheriff should summon a jury to try the validity of the claim and if such jury decided in favor of the claimant, the sheriff was entitled to relinquish the levy unless the attaching or judgment creditor gave him sufficient indemnity for proceeding thereon. This provision of the Practice Act was carried into section 689 of the Code of Civil Procedure upon its original adoption and was continued therein in substantially that form until the year 1891 when the said section was amended so as to read substantially as the section now reads, except that it contained the requirement that the third-party claimant, in addition to claiming the property levied upon as his

property and setting out his right to the possession thereof, should also in his verified claim set out "his title thereto" and state "the grounds of such title." These latter requisites to the sufficiency of a third-party claim under this section of the code were omitted from it by the amendment thereto, adopted in 1907, enacting the section in its present form, wherein, however, the requirements that the claimant must claim the property "*as his property*" and must set out "his right to the possession thereof," were retained. While it is true that under the English procedure, and also under the procedure of the older states which fell heirs to that procedure, the courts were disposed to protect public officers required to seize property under writs of attachment or execution to the extent that when it was brought to the attention of such officer even before making the levy that the title to or right of possession of the property was disputed, such officer might, before proceeding further with such levy, demand an indemnifying bond (*Robey* v. *State,* 94 Md. 61 [89 Am. St. Rep. 403, 50 Atl. 411]). The notes to said citation show that in some jurisdictions the rule was even extended so far as to hold that if the attaching officer entertained a reasonable doubt as to the title to the property he would have a right to demand indemnity before levying upon or retaining the property under the writ (see *supra,* 89 Am. St. Rep. 415 et seq.). In the early case of *Long* v. *Neville,* 36 Cal. 455 [95 Am. Dec. 199], it was declared to be the rule that when an attachment or execution was placed in the hands of an officer to be executed upon property *in the possession* of third parties claiming to be the owners thereof, he could not be required to seize such property until upon demand he was indemnified by the plaintiff seeking the execution of the writ, and the court in that case indicated that whenever the case afforded reasonable grounds for the sheriff to entertain doubts as to the lawfulness of his levy he would be entitled to demand indemnity before making or continuing the same. In that case, however, the question did not arise in an action involving the levy of a writ of attachment or execution, but arose upon the levy of a writ of possession as against third parties already in possession of the property claiming to be the owners thereof, and hence cannot be held to be controlling upon the court. But even if it be conceded that the rule as approved in other

jurisdictions and as expressed in the case last above referred to was to be held persuasive as to the proper attitude of the courts toward public officers charged with the duty of executing writs of attachment or execution, it must be held that the legislature of this state, in its amendment to section 689 of the Code of Civil Procedure, made in 1891, intended to adopt and apply to officers making levies of writs of execution or attachment a more rigid rule than that prevailing in other jurisdictions as to the rights of such officers to demand and be given indemnifying bonds in order to insure the retention of property levied upon by them. The section in its amended form, as enacted in 1891, sets forth as the necessary basis of the right of such an officer to demand indemnity, the service upon him of a verified claim by any third party claiming the property, setting forth not only his claim thereto but also his right to the possession thereof and his title thereto, stating the grounds of such title. It would be idle to argue that the legislature in thus stating the specific requirements of a third-party claim, the service of which upon the officer should supply the basis for his demand for indemnity, did not intend a substantial compliance with its terms as a prerequisite to such demand; and while it may be still held to be true that the policy of the courts should be to protect public officers in the exercise in good faith of their function in relation to the levy of process upon the property of litigants, it must also be held that the courts in so doing must have some reasonable regard for the express provisions of the statute regulating and limiting their powers and duties in respect to such levies.

In other words, we interpret the intention of the legislature in the adoption of section 689 of the Code of Civil Procedure in the form of its enactment in 1891 and of its later modification in 1907 to have been that of requiring that a third-party claimant shall have presented to the officer a verified claim showing on its face substantially that he claimed the property subjected to the levy to be his property and setting out his right to the possession thereof before such officer would become entitled to demand of the plaintiff in the action an indemnifying bond. The absence of either or both of the foregoing requirements from such verified third-party claim as might be presented would have

the result of failing to furnish the officer any basis for a demand upon the plaintiff for an indemnifying bond.

[2]  Having in mind these conclusions, let us look to the substance of the third-party claim presented to the sheriff, as shown by the pleadings and findings in the instant case. It sets forth, it is true, that the goods in question "are the property of the Bank of Italy," describing the same; but it immediately thereafter proceeds to set forth as the basis for its claim of ownership thereof the fact that it "became owner of said goods by an assignment given by the defendant . . . to the said Bank of Italy to secure the payment of a promissory note." This statement shows upon its face that the Bank of Italy was not the owner of the property in question and had no other right of property in it than that which would arise from the alleged assignment thereof to it as security for a debt.  [3]  Section 2924 of the Civil Code provides that: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge." Section 2888 of the Civil Code provides: "Notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property subject to the lien." From these provisions of the Civil Code it follows that the utmost right of property which the Bank of Italy could have had or asserted with respect to the merchandise in question by virtue of the alleged assignment thereof from Dellaira to it would have been a lien of some sort upon said property.

[4]  There are only two forms of lien which under our law can be created by an assignment of personal property as security for a debt. These are (1) a pledge and (2) a mortgage. As to the lien of a pledge, it is dependent on possession (Civ. Code, sec. 2989), and in case such possession has been taken by the creditor under such form of transfer it is provided in section 2913 of the Civil Code that: "The voluntary restoration of property to its owner by the holder of a lien thereon dependent upon possession extinguishes the lien as to such property, unless otherwise agreed by the parties, and it extinguishes it, notwithstanding any such agreement, as to creditors of the owner and

persons, subsequently acquiring a title to the property, or a lien thereon, in good faith, and for value." [5] The only other form of lien which can be created by an assignment of personal property to secure a debt is that of a mortgage, and a mortgage of personal property not only does not entitle the mortgagee to possession unless so authorized by the express terms of the mortgage (Civ. Code, sec. 2927), but a mortgage of personal property is void as against creditors of the mortgagor unless executed with the formalities required by the terms of section 2957 of the Civil Code. [6] In addition to the foregoing provisions of the Civil Code bearing directly upon whatever right of property the Bank of Italy could have had or asserted in the property in question by virtue of its alleged assignment thereof of it from Dellaira there is also section 3440 of the Civil Code, which declares that: "Every transfer of personal property, other than a thing in action, or a ship or cargo at sea or in a foreign port, and every lien thereon, other than a mortgage, when allowed by law, and a contract of bottomry or *respondentia*, is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, . . . "

[7] It would appear beyond question that the third-party claim of the Bank of Italy was in its original form fatally defective in so far as it attempted to assert any right of property in the said bank which would give it a superior right thereto as against the right of the attaching creditor. But it was fatally defective for still another reason. Section 689 of the Code of Civil Procedure provides that the third-party claim required by that section to be served upon the officer must also set out the claimant's "right of possession thereof." The claim of the Bank of Italy as originally set forth and served upon the sheriff in this case entirely omits to expressly assert any right of possession in it or to set out anything from the statement of which any implication or reference of a right of possession in the Bank of Italy could arise. It follows necessarily that said third-party claim in its original form and content furnished no basis

whatever which would entitle the attaching officer to demand an indemnifying undertaking from the plaintiff or which by any process of reasoning could be held sufficient to justify such officer in releasing the attached property when such bond was not given.

[8]   It is contended, however, by the respondents herein that the service upon the attaching officer by the Bank of Italy of its amended and verified claim, which they assert to have been sufficient in form and substance to satisfy the terms of the statute, was such as to entitle the bank to a release of said property and as to entitle the sheriff to give such release without any further or renewed demand upon the plaintiff for an indemnifying bond and without any such delay as would have enabled the latter to have procured and tendered such bond.   We discover no merit in this contention since, if, as we have held, the original claim of the bank was so fatally defective as to furnish no basis for the sheriff's demand for an indemnifying bond, and if his said demand therefor was so utterly ineffectual as to give him no right whatever to release such property on account of the failure or refusal of the plaintiff to give such bond, it must follow that no attempted amendment of such original claim could be held to give any validity to the sheriff's void act in making such demand.   Conceding, though not deciding, that the amended claim of the bank would have been sufficient in form and substance to have justified the attaching officer in the making of a new demand of the plaintiff for an indemnifying bond, the undisputed evidence in the case discloses, and the findings of the trial court show, that without the making of any such renewed demand and, so say the findings, "without notice to the plaintiff of the filing of said amended affidavit," the sheriff at once released said attached property and delivered the same to the Bank of Italy; and thereafter, and upon the protest of the plaintiff against such unauthorized release of said property and his demand that the said sheriff retake possession of the same, refused and neglected so to do.   We have not thus far decided the question as to whether or not the amended and verified claim of the said bank would have been sufficient to have justified the sheriff in demanding an indemnifying undertaking under the provisions of section 689 of the Code of Civil Procedure nor do

we, for the reasons above set forth, find it necessary to so decide.

[9]  The respondents herein make certain other contentions which may be briefly noted: It is insisted by the respondents that the plaintiff's complaint is insufficient in its averments of ownership of the attached property in Dellaira at the time of such attachment.  The averments of the complaint are that the writ of attachment directed to the said sheriff required him to attach and safely keep all the property of the defendant Luigi Dellaira; and that "pursuant to said writ of attachment, defendant Thomas Finn as such sheriff duly levied upon, attached and took into his custody certain goods, wares and merchandise belonging to the defendant Luigi Dellaira," describing the property so taken.  We think a complaint in this form, though inartificial in its recital of the ownership of the attached property by Dellaira, would be sufficient as against a general demurrer.  [10]  The defendants, however, also presented a special demurrer to the effect that the complaint was uncertain in that it did not appear therefrom "how or in what manner the goods attached belonged to the defendant Luigi Dellaira."  This special demurrer might as a matter of strict pleading be held to furnish sufficient basis for the claim of prejudicial error on the part of the trial court in overruling the same were it not for the fact, as fully shown by the record, that the defendants were in nowise misled thereby, but were at all times fully advised as to what the rights of ownership of the said Dellaira were in said property; and for the further fact that upon the trial of the cause upon its merits the trial court found that at the time of the levy of said attachment the said Dellaira "was the owner and was in the exclusive possession and control" of said property.  Under these conditions we think that the complaint formed a sufficient basis for the issuance of the writ of attachment and that the defendants were not prejudicially injured by the overruling of their special demurrer to said complaint. [11]  The respondents further contend that the complaint does not sufficiently aver that no demand was made upon the plaintiff by the sheriff for an indemnity undertaking after the presentation to him of the Bank of Italy's amended claim.  The complaint in that behalf avers that the sheriff released the said property without giving any notice to the

plaintiff as to the filing of said amended claim.  The evidence
in the case sufficiently shows that no such second demand
was ever made.  The trial court follows the averment of the
complaint in its express finding that the sheriff released
the property in question ''without any notice to plaintiff
of the filing of said amended affidavit.''  We think the
pleadings, the evidence, and the findings are sufficient to
show that the issue as to whether the sheriff ever made a
renewed demand upon the plaintiff for an indemnifying bond
after the service upon him of the amended claim of the
Bank of Italy was tendered and tried, and that upon that
subject the findings of fact of the trial court were in the
plaintiff's favor.

[12]  The appellant herein urges that this is a proper
case for this court in reversing the judgment of the trial
court to order that court to enter judgment in favor
of the plaintiff herein upon the findings.  The trial court
found that the attachment was duly issued and levied by
the defendant Thomas F. Finn as sheriff, etc., and as attach-
ing officer, and that the defendant Hartford Accident and
Indemnity Company was the surety upon the said sheriff's
official bond; that the property taken under said attachment
was the property of Luigi Dellaira, doing business as ''Cali-
fornia Grape Association,'' and that at the time of such
levy he was the owner and in the exclusive possession,
custody, and control thereof; that upon the levy of said
attachment and to procure its release the defendant Bank
of Italy presented to and filed with the defendant Thomas
F. Finn, the attaching officer, its third-party claim, a copy
of which is set forth in said findings; that thereupon the
said attaching officer made demand upon the plaintiff to
indemnify him against said original third-party claim; that
thereupon said plaintiff notified said attaching officer that
said third-party claim was invalid and insufficient and that
it affirmatively showed upon its face that said Bank of Italy
had no right to the possession of said attached property;
that thereupon the said Bank of Italy filed with said attach-
ing officer its amended affidavit in support of its said claim;
that upon the filing of said amended affidavit in support of
its original third-party claim the said attaching officer,
without notice to the plaintiff of the filing of said amended
affidavit, released said attached property and delivered the

same to the defendant Bank of Italy; that at the time of levy of said attachment and at all times subsequent thereto said attached property was of the value of more than $8,000; that the allegations of the plaintiff's complaint as to the amount of the plaintiff's claim and demand against said Luigi Dellaira and that the same amounted to the sum of $4,923.84, for which judgment was prayed for in this action, are true, and also that the plaintiff's judgment for the same against said Luigi Dellaira remains and is wholly unsatisfied. The aforesaid findings of fact were, and under our interpretation as to their legal effect as above set forth are, sufficient to have entitled the plaintiff to a judgment in his favor against the defendants herein for the sum demanded in his said complaint, with legal interest thereon from November 22, 1920, and for his costs of suit. In view of these facts we can see no reason for a retrial of this action.

It is, therefore, ordered that the judgment herein be and the same is hereby reversed, with direction to the trial court to enter judgment for the plaintiff in accordance with the foregoing opinion.

Myers, C. J., Lawlor, J., Waste, J., Seawell, J., Lennon, J., and Houser, J., pro tem., concurred.

Rehearing denied.

In denying a rehearing, the court filed the following opinion on August 30, 1924:

THE COURT.—The petition for rehearing is denied.
[13] It is urged upon petition for rehearing herein that the court should have also considered and disposed of the question of the validity of the claim of title asserted by the Bank of Italy in its amended third-party claim in determining the latter's liability for damages for the conversion of the property through its wrongful release from attachment, based upon its assertion of a third-party claim and through the delivery to it of such property upon such claim of ownership thereof by it. The trial court found that on July 22, 1919, and at the time of the levy of the writ of attachment referred to in the complaint Luigi Dellaira, doing business as California Grape Association, was the owner and in the exclusive possession, custody and control

194 Cal.—14

of certain merchandise, describing the property in question. Whatever claim of ownership the Bank of Italy at any time asserted to said property had its origin in transactions between itself and Dellaira antedating said date. These transactions as shown by the evidence thereof educed by the bank itself in connection with its original and amended third-party claim sufficiently show Dellaira to have been prior to June 4, 1919, the owner and in possession of the property in question; that he made an assignment of the same to the defendant Bank of Italy as security for an indebtedness to it, and delivered the same to the bank as a pledge with said assignment; that thereafter the bank restored the possession of said goods to Dellaira and thus destroyed said pledge; that it then took from Dellaira the trust receipts in question, leaving the latter in full possession and control over said property; that its claim of ownership of said property, as set forth in its original and amended third-party claim, rests wholly upon the aforesaid state of facts. The conclusion is irresistible that such a claim of ownership is void upon its face as against creditors, for the reason that it is violative of the provisions of section 3440 of the Civil Code. (*George* v. *Pierce,* 123 Cal. 172 [55 Pac. 775, 56 Pac. 53]; *People* v. *Martin,* 53 Cal. App. 671 [200 Pac. 808].) Trust receipts of this character, resting upon no prior ownership of the property by the creditor for whose benefit the so-called trust is created, have quite uniformly been held to be void as against creditors. (*In re Fountain,* 282 Fed. 816 [25 A. L. R. 319]; *Jordan* v. *Fed. Tr. Co.,* 296 Fed. 738, and cases cited.) Both of these recent cases refer with approval to an instructive article upon "Trust Receipts" in volume 22, Columbia Law Review, page 395 et seq. After quoting copiously from said article and commenting upon the decisions of the supreme court of the United States upholding its views, the court in the case of *In re Fountain, supra,* sums the whole matter up as follows:

"Every trust receipt decision cited by the supreme court in connection with the remarks we have quoted falls within the foregoing limitation. (See *Commercial Bank* v. *Canal Bank,* 239 U. S., at page 524 [Ann. Cas. 1917E, 25, 60 L. Ed. 417, 36 Sup. Ct. Rep. 194, see, also, Rose's U. S. Notes].) Any such extension of the rights of the holders of trust

receipts as is sought to be established here would, if consistently applied, enable every money lender, by employing a trust receipt, to preserve a secret lien, and would virtually destroy the efficacy of the Chattel Mortgage Act. We regard the contention as untenable and unsupported by authority. The only case where the holders of trust receipts have been allowed by this court to prevail against the ultimate purchaser or his trustee in bankruptcy, have been those where the title of the holder of the trust receipt was derived from someone other than the debtor. (*In re Cattus,* 183 Fed. 733 [106 C. C. A. 171]; *In re Coe,* 183 Fed. 745 [106 C. C. A. 121]; *In re Marks & Co.,* 222 Fed. 52 [137 C. C. A. 590].) The same is true of the decision of the supreme court in *Dows* v. *National Exchange Bank,* 91 U. S. 618 [23 L. Ed. 214, see, also, Rose's U. S. Notes], a case which arose in the Southern District of New York. The federal courts in the Third District have adopted the same view. (*Century Throwing Co.* v. *Muller,* 197 Fed. 252 [116 C. C. A. 614]; *Assets Realization Co.* v. *Bank,* 210 Fed. 156 [126 C. C. A. 662]; *Roth* v. *Smith,* 215 Fed. 82 [131 C. C. A. 390]; *In re Dunlap Carpet Co.* [D. C.], 206 Fed. 726; and *In re Killian Mfg. Co.* [D. C.], 209 Fed. 498.) We have discovered no decision of any court extending the above doctrine, and this court has refused to extend it to a case like the present. (*In re Gerstman,* 157 Fed. 549 [85 C. C. A. 211]. See, also, *American & British Sec. Co.* v. *American & British Mfg. Co.* [D. C.], 275 Fed. 121.)''

In the case of *In re Fountain, supra,* the court had also before it another matter entitled ''In re Carl Dernburg & Sons Inc.,'' wherein the identical situation was presented which is present in this case and wherein the court held that the trust receipts taken by the preferred creditors in that case were void as against creditors of the putative trustee or their representative, the trustee in bankruptcy. The reasoning of these cases has exact application to the facts of the case at bar and leave no doubt in our minds as to the insufficiency of the trust receipt taken by the Bank of Italy in the instant case to support its claim of ownership of the attached property. [14] This being so and said bank having been a coactor with its codefendant, the sheriff, in procuring an unlawful release of the property in question from the lien of said attachment and the delivery thereof

to itself, it must be held liable for whatever damages the plaintiff sustained from the conversion of said property accomplished thereby.

All the Justices concurred except Shenk, J., who dissented.