[Civ. No. 12400.   Second Appellate District, Division Two.—February 24, 1940.]

FRANK M. CHICHESTER, Trustee, etc., Appellant, v. COMMERCIAL CREDIT COMPANY (a Corporation), Respondent.

440

Harry Ashton and George Appell for Appellant.

Otto A. Gerth for Respondent.

THE COURT.—Plaintiff, as trustee of the estate of William C. Reagan, Inc., a corporation, bankrupt, commenced

this action to recover damages in the sum of $13,239.52 for the conversion of certain automobiles alleged to have been the property of the bankrupt. The complaint contained three causes of action, the first being the ordinary form of action for conversion, the second an action for damages by reason of the alleged preferential transfer of the automobiles to defendant by the bankrupt contrary to the Bankruptcy Act of the United States and the third alleging the transfer to be void because of the failure to comply with the provisions of section 3440 of the Civil Code. In addition, plaintiff, in his capacity as trustee of the estate of William C. Reagan (individually), bankrupt, filed a complaint in intervention which contained in general the same allegations as the original complaint. Trial of the action resulted in a judgment for defendant, from which this appeal has been taken.

The facts out of which this action arose are substantially as follows. William C. Reagan was a retail automobile dealer selling Chrysler and Plymouth automobiles in a suburb of Los Angeles. Prior to July 17, 1937, at which time William C. Reagan individually and William C. Reagan, Inc., a corporation, filed petitions in bankruptcy, defendant and Reagan had had numerous dealings over a period of approximately five years. The only transactions with which we are concerned are those having to do in general with the financing by defendant of the purchase of automobiles which were placed on the floor at Reagan's place of business and sold by the latter. Under the procedure adopted in the purchase of the automobiles in question whenever Reagan wished to obtain Plymouth automobiles, he went to the office of defendant and signed trust receipts for the cars which he desired to purchase, together with promissory notes in the same amounts as the trust receipts. Thereafter, defendant called the Los Angeles office of the Chrysler Corporation and ordered the automobiles delivered to Reagan's place of business. In the case of the purchase of Chrysler automobiles, Reagan placed the order with the Chrysler Corporation in Detroit, Michigan, and after payment of the purchase price by defendant, the automobiles were shipped to Reagan but the bills of lading were made out to, and sent directly to defendant. After Reagan had signed trust receipts for the automobiles, together with promissory notes in the same amounts as the trust receipts, defendant delivered the bills

of lading to Reagan and the latter took delivery of the automobiles. In each instance, the full purchase price of the automobiles, plus freight and other charges, was paid by defendant directly to the Chrysler Corporation. The trust receipts involved were agreements whereby Reagan agreed to hold the designated automobiles in trust for defendant, defendant agreeing that Reagan might sell the automobiles for not less than a minimum price, providing an equal amount of money was immediately delivered to defendant. It was further agreed that defendant could repossess said automobiles at any time. A statement of such trust receipt financing was duly filed with the secretary of state by defendant in accordance with the provisions of section 3016.9 of the Civil Code. Defendant repossessed the automobiles in question on or about July 8, 1937, and thereafter sold them. At that time no part of the amount due under the trust receipts covering the automobiles which are the subject of this action had been paid by Reagan.

At the outset, it should be noted that plaintiff concedes that the bankrupt, William C. Reagan, Inc., a corporation, has no interest in the automobiles in question, which fact is supported by the record, since it appears that defendant dealt with William C. Reagan individually and not with the corporation.

On behalf of plaintiff it is contended that title to the automobiles never vested in defendant and that, in reality, the so-called "trust receipt" transaction between the parties was a chattel mortgage which was void for failure to comply with the provisions of section 3440 of the Civil Code relative to recordation.

No California case has been called to our attention which has passed upon the validity of trust receipt transactions under the Uniform Trust Receipts Law of the state. The trust receipt method of financing retail dealers in automobiles, as well as other types of merchandise, has now come into common usage in this country. So widespread had the practice become by 1933 that during that year the National Conference of Commissioners on Uniform State Laws adopted a so-called "Uniform Trust Receipts Act" which was recommended for adoption by the various state legislatures. With very few changes, this uniform act was adopted by our

legislature in 1935 as the "Uniform Trust Receipts Law", which is now found in sections 3012 to 3016.16 of the Civil Code. While the security interest afforded by a trust receipt prior to the enactment of the uniform law was somewhat similar to many other forms of chattel security, it may be distinguished from such transactions as a mortgage, pledge or conditional sale. In the case of a mortgage, a lien is given by the mortgagor to the mortgagee in order to secure the latter for the performance of an obligation by the mortgagor who retains possession of the property. The trust receipt does not conform to a pledge, since in the case of a pledge the security depends upon possession of the goods by the person secured; whereas in the case of a trust receipt, the entruster does not have possession of the goods. In the case of a conditional sale, possession may not ordinarily be retaken until there is a default in the contract; whereas under a trust receipt transaction, possession may be retaken at any time. Other distinguishing features of these various types of security interest under the former law are clearly indicated in the case of *In re James, Inc.*, 30 Fed. (2d) 555.

Prior to the adoption of the Uniform Trust Receipts Law, the only instance where the security title of a trust receipt holder was permitted to prevail against the claims of creditors of the trustee or against his trustee in bankruptcy, was where the title of the entruster or trust receipt holder was derived from someone other than the trustee. (*Arena* v. *Bank of Italy*, 194 Cal. 195 [228 Pac. 441]; *In re James, Inc., supra; In re Fountain*, 282 Fed. 816 [25 A. L. R. 319].) Where the title of the entruster was derived from the trustee and not from some third person, the transaction was treated as being similar to a chattel mortgage and was held to be void as against creditors of the trustee in the absence of recordation. (*Arena* v. *Bank of Italy, supra*.)

If in the instant case defendant held the title to the automobiles at all times, as was found by the court, deriving such title directly from the Chrysler Corporation, its security interest would be protected under the former law as well as under section 3016.4 of the Civil Code. The evidence discloses with respect to the Chrysler automobiles that although they were shipped by the Chrysler Corporation directly to

Reagan, accompanied by invoices made out to Reagan, the bills of lading were made out to, and were sent directly to defendant. The evidence is conflicting as to whether sight drafts were attached to all of such bills of lading, but it appears without controversy that in every instance, whether by paying such drafts, or by other arrangements, defendant paid the full purchase price for such automobiles directly to the Chrysler Corporation. Moreover, defendant paid all of the freight charges. The bills of lading were not delivered to Reagan until after the trust receipts had been signed. Concerning the Plymouth automobiles which were delivered from the Los Angeles office of the Chrysler Corporation, defendant after securing trust receipts from Reagan, ordered the cars to be delivered to Reagan's place of business and paid the purchase price directly to the corporation. There is no evidence whatever tending to prove that Reagan at any time prior to signing the trust receipts, had either title to or possession of any of the automobiles in question. Although the trial court found that defendant was at all times the owner of the automobiles in question, it was of no consequence whether defendant's title originated with the Chrysler Corporation or with Reagan.

Plaintiff places great reliance upon the case of *Arena* v. *Bank of Italy, supra,* in support of his contention that a trust receipt which does not comply with the provisions of section 3440 of the Civil Code is void as against creditors of the trustee. That decision, however, is clearly distinguishable upon its facts from the instant case. It must be borne in mind that the Arena case was decided long prior to the enactment of the Uniform Trust Receipts Law. In the Arena case, one Dellaira having both the title and possession of certain goods, assigned and delivered possession of such goods to the Bank of Italy as security for an indebtedness; thereafter the bank restored the possession of such goods to Dellaira and, at the same time took the trust receipts in question from Dellaira. Obviously, whatever title or interest the bank acquired could only have been derived from Dellaira, the trustee under the trust receipts. The court properly held that under the law which existed at that time, i. e., prior to the enactment of the Uniform Trust Receipts Law, the transaction was to be treated as being in the nature of a chattel

mortgage and consequently void as against the trustee's (debtor's) creditors unless properly recorded.

From the foregoing discussion it appears that under the former law the source of the entruster's title was the controlling factor in determining whether or not a given trust receipt transaction was valid. However, under the existing law, by which the instant case is to be governed, the entruster's security interest will be protected whether his title is derived from the trustee or from a third party. From an examination of section 3014 of the Civil Code, which defines trust receipt transactions, it is apparent that the legislature intended to include within the general provisions of the law all trust receipt transactions without regard to the source of the entruster's title. That section provides, among other things: "The security interest of the entruster may be derived from the trustee or from any other person, and by pledge or by transfer of title or otherwise."

The only case which has come to our attention, involving an interpretation of the California Uniform Trust Receipts Law, is *In re Boswell*, 20 Fed. Supp. 748, affirmed in 96 Fed. (2d) 239. The facts of that case were similar to those of the Arena case in that the entruster derived its title from the trustee who had both possession and title to the merchandise covered by the trust receipt. Thereafter the trustee became bankrupt and action was brought by the entruster to reclaim the merchandise from the trustee in bankruptcy. It was held that under the sections of the Civil Code comprising the Uniform Trust Receipts Law, such a transaction was valid and enforceable and that the entruster was entitled to reclaim the merchandise in question from the trustee in bankruptcy.

No contention is made that the trust receipts involved do not comply with the provisions of sections 3012 et seq. of the Civil Code. A statement of trust receipt financing was filed with the secretary of state in accordance with the provisions of section 3016.9 and within the time limited by section 3016.3. Unquestionably, under such circumstances, the security interest of defendant is entitled to be protected by the express provisions of the law against the claims of Reagan's creditors or his trustee in bankruptcy. Section 3016.3 of the Civil Code provides: "(1) (a) If the entruster within the period

of thirty days . . . files as in this title provided, such filing shall be effective to preserve his security interest in documents or goods against all persons . . . '' Section 3016.4 provides: '' (1) The entruster's security interest in goods, documents or instruments under the written terms of a trust receipt transaction, shall without any filing be valid as against all creditors of the trustee, with or without notice, for thirty days after delivery of the goods, documents or instruments to the trustee, and thereafter except as in this chapter otherwise provided . . . ''

Plaintiff next attacks the constitutionality of the Uniform Trust Receipts Law. It is claimed that the act is void because of its repugnancy to the provisions of section 24, article IV, of the California Constitution, which provides essentially that only one subject shall be embraced within each act and that such subject shall be expressed in the title of the act. Plaintiff asserts that the act purports to deal with the subject of chattel mortgages as well as with trust receipts without so indicating in its title. The title of the questioned act is as follows: ''An act to add a new chapter to Title XIV of Part IV of Division Third of the Civil Code to be known as Chapter III–A thereof, in relation to trust receipts and pledges of personal property unaccompanied by possession in the pledgee and to make uniform the law relating thereto and to amend section 2988 of the Civil Code relative to the lien of the pledgee.'' Section 3014 (1) (c) of the Civil Code is the alleged portion of the act dealing with chattel mortgages. By this provision, a trust receipt transaction is defined as one whereby ''the entruster gives new value in reliance upon the transfer by the trustee to such entruster of a security interest in goods or documents in possession of the trustee and the possession of which is retained by the trustee . . . ''

In considering the sufficiency of the title to an act in the light of the constitutional provision under consideration, it must be remembered that neither the best, nor the most accurate title is required. Such title need not be a complete catalogue of every portion of the statute, it being deemed sufficient if it is reasonably suggestive of the legislative purpose. (*Heron* v. *Riley*, 209 Cal. 507 [289 Pac. 160].) The requirement is merely that the title must be a reasonably in-

telligible reference to the subject embraced in the enactment. (*Estate of Wellings,* 192 Cal. 506 [221 Pac. 628]; *In re Boswell, supra.*)

In the light of the foregoing principles, the question title does not appear to be deficient. The only matters embraced by the act are trust receipt transactions and pledges unaccompanied by possession, which matters are stated in the title. At the time this law was enacted such so-called "trust receipts" were being widely used in the commercial world and were commonly understood to be forms of security instruments closely resembling, yet distinguishable from a chattel mortgage, pledge or conditional sale. As we have shown prior to the enactment of the questioned legislation a trust receipt transaction wherein the title of the entruster was derived from someone other than the trustee was held valid in this state. It was also held in this state that a trust receipt transaction wherein the title of the entruster was derived from the trustee was invalid. (*Arena* v. *Bank of Italy, supra.*) In the latter case, our Supreme Court classified the security instrument involved as a "trust receipt" but held that under existing law, the transaction was invalid because of failure to record as in the case of a chattel mortgage. It is apparent therefore that at the time the act was adopted the terminology used in the title was a reasonably intelligible reference to the matters embraced within the text of the act. Certainly the term "trust receipt" had a definitely accepted meaning, a departure from which cannot be found in the body of the act. The term "pledges unaccompanied by possession" undoubtedly was intended by the legislature to alter the existing law relating to pledges and to render valid a type of "trust receipt" transaction similar to that involved in the Arena case. It is to be presumed that the legislature was aware of the existing law and that when it used the term "trust receipt" it referred to all types of security instruments which had theretofore been classified as trust receipts. Such was the holding in the case of *In re Boswell, supra,* wherein a type of security instrument, identical with that of the Arena case, was held to be valid under the Uniform Trust Receipts Law. Nowhere in the title of the act nor in the text thereof is there any reference to chattel mortgages or to any other type of security interest not there-

tofore included within the accepted meaning of the words "trust receipt transaction". We conclude therefore that the act is not invalid because of its asserted repugnancy to section 24, article IV, of the Constitution.

■ The further contention is made that the Uniform Trust Receipts Law repeals by implication sections 3440, 2955, 2977 and 2920 of the Civil Code, dealing in general with chattel mortgages and bulk sales. There is no merit in this contention, for trust receipts constitute the only type of security interest which is not governed by the same laws that existed prior to the enactment of the legislation in question. Sections 3440, 2955, 2977 and 2920 of the Civil Code are still effective and permit the use of the types of security interests therein mentioned. It is true that the questioned legislation validates a type of trust receipt transaction resembling a chattel mortgage theretofore held invalid, but no change has been made in the law relating to chattel mortgages as such. The wisdom of this change is a matter for legislative, not judicial concern.

■ . The act itself enjoins us to so interpret and construe the act "as to effectuate its general purpose to make uniform the law of the states which enact it". (Civ. Code, sec. 3016.14.) This rule of construction has for its purpose the object of unifying the laws of the several states on the same subject and is therefore not to be treated as a codification of local laws or commercial customs. The fundamental purpose of the act in question should be considered in the light of the general commercial law of the country as a whole. "The principle of the uniform act should have recognition to the exclusion of any inconsistent doctrine which may have previously obtained in any of the states enacting it." (*Commercial Nat. Bank* v. *Canal-Louisiana Bank & Trust Co.*, 239 U. S. 520, 528 [36 Sup. Ct. 194, 197, 60 L. Ed. 417].) The conclusions we have reached concerning the interpretation of the law are fully in accord with these principles and are supported by the well-reasoned opinions of the Federal District Court and Circuit Court in the case of *In re Boswell*, 20 Fed. Supp. 748 (affirmed, 96 Fed. (2d) 239), wherein the identical issues were presented by the attack upon the constitutionality of the act.

■ The contention that defendant's repossession of the automobiles within four months prior to the time when Reagan filed his petition in bankruptcy constituted a preference in violation of section 60(a) of the United States Bankruptcy Act is without merit. The security interest of the defendant was paramount to the claims of all other persons, including the trustee in bankruptcy. (*In re Boswell, supra.*) Moreover, by the express provisions of the trust receipts the cars were to be held in trust as the property of defendant and the latter was given the right to repossess them at any time.

■ The fact that Reagan concurrently with the execution of the trust receipts executed promissory notes to defendant in the same amounts as the amount of the trust receipts did not render the transactions invalid. It is argued that the act makes no provision for the execution of such notes in connection with a trust receipt transaction and that to require such notes is inconsistent with a trust relationship. No authorities have been cited in support of such contention and we have been unable to find any authority which indicates that there is anything inconsistent in such a transaction. On the contrary, such authorities as *In re Boswell, supra,* and *General Motors Acc. Corp.* v. *Kline,* 78 Fed. (2d) 618, sustain the validity of substantially similar trust receipt transactions, where both promissory notes and trust receipts were executed.

Judgment affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 22, 1940.