[L. A. No. 9495. Department Two.—August 8, 1928.]

HOGAN FINANCE AND MORTGAGE COMPANY (a Corporation), Appellant, v. C. S. MEAD, Respondent.

(1)

Greenberg, D'Orr & Beilenson, Gilligan & Cobb, Greenberg & Beilenson and Lawrence Cobb for Appellant.

Morin, Newell & Brown, Stanley K. Brown and J. W. Morin for Respondent.

SHENK, J.—This is an appeal by the plaintiff from a judgment in favor of the defendant, C. S. Mead, on his cross-complaint in an action in claim and delivery.

The defendant and cross-complainant was a distributor of Chevrolet automobiles in Pasadena. One I. H. Weaver was a retail automobile dealer located at San Gabriel. The plaintiff was engaged, among other activities, in purchasing and financing contracts for the purchase of automobiles, dealing directly with automobile dealers. Weaver entered into an agreement with Mead to handle Chevrolet cars at San Gabriel. Under this agreement Weaver received numerous cars from Mead and sold them to customers in the San Gabriel territory. Whether Weaver purchased the cars, taking title in himself, or received them on consignment, is the crucial point in the case. There was no agreement in writing between these two contracting parties as to whether the transaction between them should constitute a sale or a consignment other than as might be inferred from the

documentary evidence as to what took place between them. This documentary evidence is found in a promissory note payable on demand in the principal sum of the price to Mead for each car. A note was executed by Weaver to Mead on each car at the time the car was delivered to Weaver and the note had appended to it beneath the signature of the maker the words "secured by," followed by the description of the car by model, motor number, and serial number.

In December, 1924, Weaver became involved financially and had disappeared. At that time Mead had in his possession five of said notes on which no payments had been made. He went to the Weaver Garage at San Gabriel, found therein the motor cars described in said five notes and removed them to his place of business in Pasadena. He also commenced an action against Weaver on the sixth demand note different in form but authorizing suit thereon in the event of nonpayment. The car described in this note was not found by Mead, but in said action he attached a sixth car, the possession of which was then in Weaver. After judgment in said action Mead purchased said car at execution sale.

On December 15, 1924, the plaintiff commenced the present action describing in the complaint the six cars hereinbefore mentioned and a seventh car which is not now involved herein. At the commencement of this action the plaintiff, by furnishing the necessary bond, required the sheriff to take possession of all of said cars. The defendant did not file a repossession bond and upon the expiration of the statutory period said cars were delivered to the plaintiff, who subsequently sold them to third parties.

The trial court found that at the time of the commencement of this action Mead was the owner of the automobiles in question; that Mead had placed said automobiles in the hands of Weaver on consignment with authority in Weaver to sell the same in the usual course of business and to account to Mead in case of the disposition of any of said cars. Whether this finding is supported by the evidence is the important question.

It must be conceded that the notes themselves, unaided by other evidence, might support the inference that the parties intended that the transaction should be a sale and not a consignment. On the other hand, it must also be

conceded that this inference is not controlling or conclusive if the agreement of the parties evidenced an intention that Weaver was to be a sales agent or consignee and that the promissory notes were to be the evidence of the amounts for which the consignee should be bound to account to the owner or consignor. The original agreement was an oral agreement between Mead and Weaver. Weaver was arrested on December 9, 1924, and was thereafter sentenced to state prison. He was not a witness at the trial of this action. Mead testified that Weaver came to him and wanted to know if there were not some way whereby Weaver could handle Chevrolet cars at San Gabriel; that he was agreeable, but that he soon found out that Weaver did not have sufficient money to buy the cars; that Weaver said, "Isn't there any way that I could make arrangements about the cars?" and that Mead said, "Yes, I will consign you cars, take cars on consignment and I will hold a note against those cars"; that when Weaver took a car he signed a note and that when he made a sale he would report it and take up the note. The evidence of the circumstances attending the making of the original oral contract followed by the execution of the notes would, it may be assumed, support a finding to the effect that the transactions were purchases and that title passed to Weaver, but the opposing inferences in favor of the finding that was made by the court are also deducible from the evidence. Under this state of the record it cannot be held that there was no substantial evidence to support the finding complained of.

The evidence is undisputed that the defendant was the purchaser of the sixth car at the execution sale. It is admitted that title to this car had passed to Weaver. There is no dispute that Weaver purported to convey his title thereto to the plaintiff, but he retained and had possession of the same at the time of the commencement of the attachment suit. Mead was a creditor of Weaver under the note sued on in that action. The purported sale of this car to the plaintiff was therefore ineffective as against Mead under the provisions of section 3440 of the Civil Code.

After Weaver had received the other five cars involved in this controversy he drew up purported conditional contracts of sale thereof and forged the signatures of the purchasers. He thereupon sold for cash this forged paper

and assigned his right, title and interest thereunder and in and to the cars themselves to the plaintiff. In the assignment he guaranteed to the plaintiff the full payment of the contract price at which the cars were supposed to have been sold and represented title in the cars to be in himself. It is under these forged instruments that the plaintiff claims title. It is obvious that if Weaver had no title to these cars, as the court found, he could not transfer title to the plaintiff, unless he was authorized to do so, which the evidence shows was not the case.

Furthermore, the court found in favor of Mead on every element of estoppel advanced by the plaintiff. From the evidence it appears that Mead was diligent at all times in his transactions with Weaver, by often and periodically checking the cars on Weaver's showroom floor and by keeping close account of all of his dealings with Weaver. On the other hand, the evidence discloses that the plaintiff purchased said conditional contracts of sale without any check of what cars Weaver was handling. It even appears that in one instance Weaver sold to the plaintiff three different contracts of sale covering the same car. In this respect it would appear that the plaintiff was wanting in the due care necessary to protect itself against the fraudulent transactions of Weaver. Section 3543 of the Civil Code is applicable in favor of Mead and against the plaintiff in this phase of the case.

It is unnecessary to discuss the many authorities cited by the respective parties, as the supported findings of the court in connection with the foregoing observations are deemed determinative.

The judgment is affirmed.

Richards, J., and Langdon, J., concurred.