[Civ. No. 12208.   Second Appellate District, Division One.—February 6, 1941.]

METROPOLITAN FINANCE CORPORATION OF CALIFORNIA (a Corporation), Appellant, v. HOWARD MORF et al., Respondents.

J. Edward Haley for Appellant.

Pierson & Block and Ralph K. Pierson for Respondents.

DORAN, J.—The appellant herein appeals from a judgment in favor of defendants and respondents entered after a trial of the issues in an action brought by appellant for an alleged conversion of certain automobiles.

There is no conflict in the evidence. It appears therefrom that at the time of the transactions which gave rise to this litigation, one J. K. Woods was engaged in the retail used car business in the city of Los Angeles, and had been so engaged for a period of approximately ten years. Respondents Morf and Fewel were engaged together in the business of wholesaling used cars, either as partners or in the relationship of employee and employer, and the cars here in question were obtained by Woods from the said respondents. According to Woods' own testimony, his general course of business in such matters was as follows: "And I would look them over and whatever car I was interested in, I would ask him what they wanted for it, what price they wanted for it, and so forth, and finally tell him that I would take the car providing it was good mechanically. And they would deliver the cars to my place—their employees—and if the car was in such a condition that I wanted it at the price that they quoted me on it, I would have a check made out for it, my bookkeeper would make out a check for it and I would file it and when they brought in the pink slips, why, I gave them the check for the car. That was the way I handled it." According to Woods' further testimony, the cars here concerned appear to have been obtained upon such terms. Woods appears to have signed order blanks for the cars in question. However, though these blanks were marked for identification, they were not placed in evidence. The cars were apparently delivered

to Woods during the period from January 14, 1937, to February 17, 1937.

According to the record, these cars, seven in number, were brought into California from outside the state, and were then registered in this state in the name of respondent Fewel. Respondent Covington was also registered in California as legal owner of four of the cars, and appears to have financed Fewel's acquisition of the said cars under trust receipt transactions.

Shortly after obtaining each of the said cars, Woods applied for and received a loan or advance from appellant upon each, giving to appellant in exchange an instrument denominated ''Trust Receipt'', which recited that Woods held the car in question as trustee for appellant, with right of sale. In the case of six of the seven cars involved, these so called trust receipts bear a date prior to the date when the cars were registered in California in Fewel's name. Appellant received no other instrument or document of title.

Registration of the said cars was never transferred to Woods or to appellant, nor did Woods or appellant ever receive the certificates of ownership of the said cars. At the time the cars were delivered to Woods, title to the same does not appear to have been transferred to respondent Fewel on the records of the Motor Vehicle Department of California. Although Woods drew checks to Fewel for the cars, the checks were never delivered to Fewel nor was any payment made to respondents for the said cars. Early in March, 1937, Woods was declared bankrupt and shortly before that time the respondents, or some of them, appear to have taken possession of the cars and the same were later sold to other persons.

It also appears that when appellant advanced the money to Woods on the cars there was no particular check made as to Woods' possession of or title to the same. The transaction was negotiated upon the presentation by Woods of slips of paper describing the cars in question, and Woods was not asked for either the white or pink certificate, neither of which he had. The loan transactions between Woods and appellant do not appear to have any direct connection with the acquisition of the cars by Woods from respondents. There was on file with the Secretary of State of California a statement covering trust receipt financing of respondent Fewel by respond-

ent Covington, and a similar statement regarding such financing of Woods by appellant.

The court found that the plaintiff (appellant) was not the owner and entitled to possession of the said cars and that there had been no conversion by defendants (respondents).

It is manifest that under the circumstances appellant could have no cause of action against respondent Covington for conversion of the cars. Covington as registered legal owner, and entruster of Fewel, is clearly shown to have a right to possession of the cars prior in time and superior to that of appellant, assuming appellant to have any interest. As will hereinafter appear, the doctrine of estoppel is not applicable to the facts presented.

■■ The nature of appellant's interest in the cars, if any, depends of course upon the true nature of the so called trust receipt transactions with Woods. These transactions were not of the type within the contemplation of the Uniform Trust Receipts Law (Civ. Code, secs. 3012 to 3016.16). Appellant did not purchase the cars on behalf of Woods, nor did it take title to itself as security for its advancement or receive any bill of lading and draft or ownership certificate as agent for the seller. Furthermore it appears that the "Trust Receipts" were given by Woods to appellant before title to the cars passed to Woods. There had been no registration of the cars in Woods' name nor delivery to him of any endorsed certificate of ownership. Short of an estoppel there was nothing to prevent the application of the provisions of section 186 of the Vehicle Code and the mere delivery of the cars to Woods was ineffective so far as vesting of any title or interest in Woods was concerned. The trust receipt, before the passing of the title to Woods, was inoperative to vest any legal title in appellant, and, even if title had thereafter passed to Woods, the receipt in question could not have deprived him of title. (*People's Nat. Bank of Boston* v. *Mulholland*, 224 Mass. 448 [113 N. E. 365].)

The instant case is readily distinguishable from that of *Commercial Credit Co.* v. *Barney Motor Co.*, 10 Cal. (2d) 718 [76 Pac. (2d) 1181], cited by appellant, in that there title to the car had been transferred directly to the finance company, while here that essential element of a trust receipt transaction is lacking.

Furthermore, aside from the applicable provisions of the Motor Vehicle Code, it is clear that in the sale of the cars to Woods by respondents the parties did not intend property in the cars to pass to Woods until approval by Woods of the mechanical condition of the cars and the delivery to him of a properly endorsed certificate of ownership. The sale was thus one upon approval, or terms similar thereto, and according to the rules for ascertaining the intention of the parties under section 1739 of the Civil Code, rule 3 (2), and upon the facts of the case, property in the cars had not passed to Woods at the time the trust receipts were executed.

Respondents are not estopped to assert their title to the cars in question. In the first place, the evidence shows that appellant did not rely upon any act of respondents but relied solely upon Woods' representation that he had the cars in his possession and did not take any precaution to verify Woods' statement. In the second place, respondents had merely given Woods possession of the cars, and entrusting a third person with mere possession does not constitute holding him out as owner. (*Bice* v. *Harold L. Arnold, Inc.*, 75 Cal. App. 629, 638 [243 Pac. 468].) Respondents had done nothing to mislead appellant as to the conditions under which Woods held possession and "nothing is better settled than that possession of personal property is *prima facie*, not conclusive, evidence of title and that the maxim *caveat emptor* applies". (*Pacific Acceptance Corp.* v. *Bank of Italy*, 59 Cal. App. 76, 81 [209 Pac. 1024] ; quoting from the note to *Davis* v. *First Nat. Bank*, 25 L. R. A. (N. S.) 760.)

Had Woods the authority or right to encumber the cars, the "trust receipts" would still lack validity as chattel mortgages, since they were unrecorded and failed to satisfy the provisions of section 2957 and section 3440 of the Civil Code. (*Hogan Finance & Mortgage Co.* v. *Mead*, 205 Cal. 1, 4 [269 Pac. 610] ; *Pacific Finance Corp.* v. *Hendley*, 119 Cal. App. 697, 705 [7 Pac. (2d) 391].)

Appellant claims to be in the position of a *bona fide* purchaser of the cars and that it comes within the definition of a purchaser contained in the Uniform Trust Receipts Law (Civ. Code, sec. 3013, subd. 11). As seen above, appellant did not obtain a valid security interest in the cars and therefore cannot come within such a definition. Nor does the case of *Commercial Credit Co.* v. *Barney Motor Co.*, *supra*, support

appellant. The bank in that case was clearly a *bona fide* purchaser. Appellant's position can be nothing more than that of a pledgee in a pledge of personal property without change of possession. The distinction between a *bona fide* purchaser and such a pledgee was expressly noted in the *Barney Motor Co.* case, *supra,* wherein at page 722 *Pacific Finance Corp.* v. *Hendley, supra,* was cited as involving the situation of a pledgee, and the latter case is directly in point here.

The evidence supports the findings of the court and the conclusions based thereon are correct.

The judgment is therefore affirmed.

York, P. J., and White, J., concurred.