[Civ. No. 12542. First Dist., Div. One. June 7, 1944.]

C. I. T. CORPORATION (a Corporation), Respondent, v. COMMERCIAL BANK OF PATTERSON (a Corporation) et al., Appellants.

724

Nathan B. McVay and Whitehurst & Logan for Appellants.

Cleary & Zeff for Respondent.

WARD, J.—This is an appeal from a judgment in favor of plaintiff for possession of three motor vehicles delivered to it by the sheriff in a claim and delivery proceeding.

Clifford H. Knutson, a retail automobile dealer, on December 12, 1935, entered into an agreement with plaintiff C.I.T. Corporation, hereinafter referred to as C.I.T., for the financing and delivery to him under trust receipts, of automobiles for exhibition and sale. By the terms of the contract Knutson agreed that "On receiving such merchandise or the documents therefor we will execute to you our Trust Receipts therefor, . . . and our note or acceptance for the amount of the same." The three cars involved in this action were purchased by C.I.T. from their owner, R. B. MacBride, a wholesale distributor, who immediately upon his delivery of them to Knutson, mailed to C.I.T. a time draft upon Knutson executed by him, or by MacBride with his (Knutson's) authorization and consent, payable to the corporation; a bill of sale and invoice from MacBride to the corporation, showing the vehicle to have been sold to C.I.T. for the account of Knutson; and a trust receipt executed by him to the corporation. Each trust receipt particularly named C.I.T. as the owner and entruster of the vehicle and Knutson as the trustee, and

gave the corporation the right to repossess the property at its pleasure.

Statements of the trust receipt financing and renewals thereof, covering the periods of the financing of the above three motor vehicles, were executed by Knutson and C.I.T., and duly filed with the Secretary of State in compliance with Civil Code, section 3016.9.

In connection with his automobile business, Knutson borrowed money from his local bank, defendant herein, from time to time, to secure which he gave the bank a bill of sale dated October 16, 1937, wherein was left a blank space for the insertion of the numbers of motor vehicles to be thereafter acquired by him. The bill of sale authorized the bank to insert such numbers of new vehicles as they were received, and the dates of loans made Knutson thereon, and as the motor vehicles were sold and the loans repaid the bank, to cancel the numbers and the dates. A notation of the engine numbers was also placed on the promissory notes as they were executed. A statement of this trust receipt financing executed by the bank and Knutson was also filed with the Secretary of State.

By reason of appellant bank's contention that under the Trust Receipts Law its security interest was prior to that of C.I.T., we here set forth the details of Knutson's financing of the three pieces of motor equipment. (1) On December 9, 1937, he procured a loan from the bank, giving his demand note therefor as of that date, and the bank added the identifying motor number of a Dodge truck to the previously executed bill of sale. The truck was not delivered to Knutson until December 10, 1937, when, under a trust receipt as of that date naming C.I.T. as owner and entruster, he received the same from MacBride. (2) On December 27, 1938, a Plymouth car sold by MacBride to C.I.T. was delivered to Knutson against his delivery to MacBride of a trust receipt naming C.I.T. as the owner and entruster and himself as the trustee. On the same day the bank made a loan to Knutson, taking his note therefor and adding the identifying motor number of the Chrysler car to the bill of sale. (3) A third motor vehicle—another Dodge truck—was sold to C.I.T. by MacBride, who delivered it to Knutson the same day—February 23, 1939, against a trust receipt naming Knutson as trustee and the corporation as owner and entruster. On the same day, the bank made a further loan to Knutson, for

which it took his note, and inserted the descriptive number of the third motor vehicle in the bill of sale.

The court found that the three motor vehicles in question "were purchased by the C.I.T. Corporation from R. B. Mac-Bride as the distributor, and who had acquired said vehicles direct from the Chrysler Corporation; that said vehicles were delivered by said R. B. MacBride to Clifford Knutson, a retail dealer, after the execution, or the authorization from Knutson to MacBride to execute, a time draft drawn upon said Knutson payable to the plaintiff corporation, together with a bill of sale from the said R. B. MacBride, the true and lawful owner, to the C.I.T. Corporation, together with a trust receipt executed by said dealer, Knutson, to the C.I.T. Corporation, together with an invoice containing an itemization as to each of said vehicles showing said vehicles to have been sold to the C.I.T. Corporation for the account of said Knutson; that by the terms of said trust receipt the dealer, Knutson, acknowledged the title of said property to be in the C.I.T. Corporation; that the goods were being held in trust for the C.I.T. Corporation subject to the right of said Knutson to exhibit and sell the same for the account of the C.I.T. Corporation in the usual and ordinary course, to keep the funds derived from such sale separate from his own, to immediately remit the same and acknowledging the right of the C.I.T. Corporation to retake said property at its pleasure." The court further found "that said vehicles were never inspected or observed before said defendant advanced any moneys to Knutson."

The evidence indicates that the bank made the loans to Knutson without any independent investigation as to his possession or ownership of the cars, but that from time to time it did ascertain that the cars were in his salesroom.

On the 28th of August, 1939, the bank having discovered that Knutson had disposed of a car, not involved in this litigation but enumerated on its bill of sale, without its knowledge or consent, took possession of the three motor vehicles herein described, which were later seized by the sheriff under a writ of replevin. After obtaining possession of the cars, C.I.T. disposed of all three at private sale, obtaining prices in excess of amounts owed thereon by Knutson. This surplus was retained by it to apply on other indebtedness of Knutson.

On the trial the bank objected to the admission of

any evidence of C.I.T.'s ownership as entruster, on the ground that special ownership must be alleged, and cannot be proved under the general issue of replevin. *Commercial Credit Co. v. Peak*, 195 Cal. 27 [231 P. 340] must guide us in the determination of this question. It was there held that it is sufficient to plead the ultimate fact of ownership. (See *Nudd* v. *Thompson*, 34 Cal. 39.)

Irrespective of the burden of proof on the trial, in order to prevail on appeal it is necessary that the bank show that its transactions are within the scope of the Trust Receipts Law and that the transactions of C.I.T. are not. (The Uniform Trust Receipts Law, Stats. 1935, p. 1930; Civ. Code, div. 3, pt. IV, tit. 14, ch. III-A.) If it appears that both parties are within the purview of such law, then it must be proved that in each of the transactions the bank's title attached before that of C.I.T.

A two-party trust receipts transaction, as appears in the dealings between the bank and Knutson, is provided for in the definition of "trust receipts." (Civ. Code, § 3014, subd. 1(b), (i) and (ii) and subd. 2.) The bill of sale from Knutson to the bank evidenced an acknowledgment of a consideration, and an agreement to sell and convey to the bank all new automobiles and trucks "as per numbers hereafter" listed. The use of the word "hereafter" has reference to the cancellation of the numbers of the vehicles as they were sold and the addition of the numbers of new cars purchased and placed on display. The bill of sale recites that a security interest remains or will remain in the entruster. ". . . the relation of entruster and trustee may be created by the execution of a trust receipt. . . ." (*Bank of America* v. *National F. Corp.*, 45 Cal.App.2d 320, 333 [114 P.2d 149].)

In a supplemental brief filed by appellant bank subsequent to the oral argument the contention is made that the Trust Receipt Law has been legislatively approved by codification; that it is a creature of statute and should therefore be strictly construed. As a general principle we agree with this contention. The bank concludes therefrom that if there is an omission to recite in an instrument "a security interest" the document is to be construed as an unrecorded chattel mortgage and not as an instrument that may be considered under the Uniform Trust Receipts Law. If the construction sought by the bank be correct, then Knutson's bill of sale to the bank is not such a trust receipt as chapter III-A contem-

plates. If both sets of instruments should be construed as trust receipts, pledges, conditional sale contracts or chattel mortgages, then it would still be necessary to determine their priority. If one should be placed in one class and the other in another it would still be necessary to determine priority.

Unless the property was already encumbered, it may be assumed from what has been said before that the bank transaction comes under the Uniform Trust Receipts Law, which brings us to the question of what was the transaction between Knutson and C.I.T.

"Security interest" is defined in Civil Code, section 3013, subdivision 12 as "a property interest in goods, documents or instruments, limited in extent to securing performance of some obligation of the trustee or of some third person to the entruster, and includes the interest of a pledgee, and title, whether or not expressed to be absolute, whenever such title is in substance taken or retained for security only." In *Chichester* v. *Commercial Credit Co.*, 37 Cal.App.2d 439, 443 [99 P.2d 1083], the court said: "While the security interest afforded by a trust receipt prior to the enactment of the uniform law was somewhat similar to many other forms of chattel security, it may be distinguished from such transactions as a mortgage, pledge or conditional sale. In the case of a mortgage, a lien is given by the mortgagor to the mortgagee in order to secure the latter for the performance of an obligation by the mortgagor who retains possession of the property. The trust receipt does not conform to a pledge, since in the case of a pledge the security depends upon possession of the goods by the person secured; whereas in the case of a trust receipt, the entruster does not have possession of the goods. In the case of a conditional sale, possession may not ordinarily be retaken until there is a default in the contract; whereas under a trust receipt transaction, possession may be retaken at any time. Other distinguishing features of these various types of security interest under the former law are clearly indicated in the case of *In re James, Inc.*, 30 F.2d 555."

In *Commercial Discount Co.* v. *Los Angeles County*, 16 Cal.2d 158, 159 [105 P.2d 115] the differentiations set forth in the Chichester case are approved, but the court said (p. 163) : "Other differences might be noted. In the case of a chattel mortgage title is found in the mortgagee prior to

the mortgage. But the chapter on trust receipts, and particularly section 3014 of the Civil Code, found therein, provides: 'The security interest of the entruster may be derived from the trustee or from any other person, and by pledge or by transfer of title or otherwise.' ''

The facts as to the C.I.T. transaction, as revealed by the record, do not disclose that the documents may, as the bank contends, be construed as unrecorded chattel mortgages. The business relations of Knutson and C.I.T. started in December 1935 upon the presentation by Knutson to C.I.T. of an application for a dealer's floor plan accommodation. Therein Knutson admitted C.I.T. ownership of the merchandise as represented by invoices and bills of lading. Each document provided: ''In the event that the said merchandise or the documents therefor shall be entrusted to us for the purpose of sale or otherwise, we hereby consent that your right to repossess yourselves of the same or proceeds thereof and to terminate our privilege of receiving further merchandise shall be exercised at any time in your discretion and that any private sale of merchandise to the manufacturer thereof or to a distributor or dealer or any other purchaser for value therein shall conclusively be deemed a proper sale and price. On receiving such merchandise or the documents therefore we will execute to you our Trust Receipt.'' ''In order to expedite your delivery of merchandise to us under Trust Receipts or otherwise, instead of mailing to you the percentage of amount of invoice from time to time required by you we will, if this is approved by you, deliver such percentage to the distributor or manufacturer for your account at the time of the delivery of the merchandise to us.'' The application was approved by C.I.T.

Section 3014 of the Civil Code sets forth alternative methods of obtaining or deriving security interest from the trustee. It may be by delivery under subdivision (a) of paragraph I or by the giving of new value under subdivision (b). In either event it must ''Be against the signing and delivery by the trustee of a writing designating the goods, documents or instruments concerned, and reciting that a security interest therein remains in or will remain in, or has passed to or will pass to, the entruster, or (ii) Be pursuant to a prior or concurrent written and signed agreement of the trustee to give such a writing.'' Knutson had agreed to the purchase price of the cars pursuant to the written and signed

contract with C.I.T. to execute a trust receipt. MacBride sold the merchandise in controversy to C.I.T. and made delivery to Knutson against his trust receipt in favor of C.I.T. The concurrent and subsequent transactions between C.I.T., MacBride and Knutson were within the purview of chapter III-A.

 On the question of priority between C.I.T. and the bank, it should be noted that neither party obtained interest in the merchandise until MacBride relinquished his right of ownership, etc. Those rights were conveyed to C.I.T. So far as Knutson was concerned, he had been given possession of the automobiles, but that possession was unaccompanied by any further right if for any reason his transaction with C.I.T. was not in accordance with their agreement and with the provisions of the statute. If the possession was without legal basis, the bank could not deal with Knutson, as the right of possession rested either in MacBride or C.I.T. If the possession by Knutson was valid it could be so only through the transaction involving MacBride, C.I.T. and Knutson, which was to terminate "at C.I.T.'s election." Knutson's right of possession was for a limited purpose.

The bank contends that the language in the C.I.T. instrument is similar to that construed in *C.I.T. Corporation* v. *Seaney,* 53 Ariz. 72 [85 P.2d 713]. A uniform trust receipts law did not exist in Arizona. That case, as others cited by the bank, is not controlling. The Arizona case did not decide whether the trust receipts were chattel mortgages or conditional sales contracts. In either case the instruments were subject to Arizona recording statutes. Trust receipt transactions involving motor vehicles are common. "This method enables the retail dealer to obtain advances from a financing company to pay the purchase price to the distributor and at the same time receive possession of the automobile for the purpose of placing it on the salesroom floor for exhibition and sale to a prospective customer. Title is transferred directly from the distributor to the finance company ·which retains such title under the trust receipt until the amount advanced as the purchase price is repaid. The validity of such trust receipts as title retention documents has been established by the courts. Subsequent to the events hereinbefore related and in 1935 (Stats. 1935, p. 1930), the legislature recognized *the common practice and adopted the Uniform Trust Receipts Law,* which comprises sections 3012 to 3016.16 of the Civil

Code." (*Commercial C. Co.* v. *Barney M. Co.,* 10 Cal.2d 718, 720 [76 P.2d 1181].)

The bank also contends that the trust receipts sent C.I.T. by MacBride after each transaction were offers which were not valid contracts until accepted and that the first evidence of acceptance is the date of setting up the transaction on the books of C.I.T. The evidence shows that C.I.T. agreed in writing to finance Knutson's purchase by means of trust receipts, requiring a separate trust receipt for each transaction. Under this method a trust receipt transaction arose upon delivery of a car by MacBride, the distributor, to Knutson, the dealer. The separate trust receipt was merely the method of identifying a particular vehicle.

We hold herein that the instruments, C.I.T. and the bank sufficiently complied with the Uniform Trust Receipts Law to be controlled by chapter III-A of the Civil Code. It is not necessary therefore to comment further upon the chattel mortgage and conditional sale contract cases cited.

All of the equitable rights in this case, based upon the evidence and as appear in the instruments, establish the claim of C.I.T. over that of the bank. The bank's claim is primarily based upon Knutson's possession of the vehicles. Possession alone is insufficient to give rise to a valid trust receipts transaction. (*Metropolitan Finance Corp.* v. *Morf,* 42 Cal. App.2d 756 [109 P.2d 969].)

The facts of this case seem to rule out the doctrine of equitable estoppel. C.I.T.'s statement of trust receipts financing was on file with the Secretary of State, putting the bank on notice. The bank did not rely upon any act or failure to act on the part of C.I.T. at the time of the transactions with Knutson relative to the three cars. The bank made no investigation of Knutson's title. (*Metropolitan Finance Corp.* v. *Morf, supra.*)

After default an entruster is entitled to possession. An entruster in possession may give a five-day notice, sent by ordinary mail, of intention to sell. (Civ. Code, § 3016.2.) Five subdivisions appear in section 3016.2. Reading the whole it is plain that "notice" was intended primarily as a means of protection to the trustee and not for purchasers from a defaulting trustee. The trustee in the present case, Knutson, makes no claim nor for that matter appearance, in the present proceeding. No objection has been made by

him or in his behalf as to the sufficiency of the notice. The defendant bank admits that it had notice of the sale, and it was not prejudiced if there was a failure to notify Knutson, a matter which from the record seems to be in dispute.

Neither C.I.T. nor the bank had knowledge or actual notice of the activities of Knutson in obtaining money on the particular vehicles. One party must suffer—the trial court determined it should be the bank. The evidence and the law uphold the trial court's conclusion.

After judgment the bank moved for a new trial in the claim and delivery action, and the case was reopened for further testimony as to the disposition of funds received by C.I.T. from the sale of the cars. The trial court found that such sum, including the surplus, was properly used.

The trustee shall receive any surplus and shall be liable to the entruster for any deficiency. The proceeds of a sale shall be applied "to the payment of the expenses thereof, to the payment of the expenses of retaking, keeping and storing . . . [and] to the satisfaction of the trustee's indebtedness." (Civ. Code, § 3016.2(3) (b).) At the hearing it developed that the employees' attendance and expenses in locating purchasers, together with attorneys' fees, etc., used up the surplus.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.