**In re SAN CLEMENTE ELECTRIC SUPPLY.**

No. 46,333–C.

United States District Court
S. D. California, Central Division.

Aug. 20, 1951.

Julius A. Leetham, Pasadena, Cal., for Ed. J. Brooks, petitioner on review.

Hugo A. Steinmeyer and Geo. L. Beckwith, Los Angeles, Cal., for Bank of America, respondent on review.

Craig, Weller & Laugharn, Los Angeles, Cal., for E. A. Lynch, trustee in bankruptcy, respondent on review.

JAMES M. CARTER, District Judge.

This is a proceeding on petition to review the order of a referee in bankruptcy, made June 27, 1950, concerning the validity of certain trust receipts, title to certain water softeners, and the right to the proceeds of the sale of the softeners, heretofore made by the trustee in bankruptcy.

The facts are relatively simple, and without dispute. On and prior to June 1, 1946, Brooks owned three water softeners which he delivered to Kimmel and Divan, copartners, doing business as the San Clemente Electric Supply. The water softeners were nonelectric and the Supply Company handled gas and electrical materials and fixtures. The water softeners were delivered under an oral agreement placing them with the Supply Company on consignment for sale, and providing that if they were sold, any excess over the cost price thereof, was to be divided 50–50 between Brooks and the Supply Company. No documents or instruments of title pertaining to the water softeners, were delivered to the Supply Company by Brooks, or any other person, at any time.

On February 9, 1948, the Bank of America entered into an alleged trust receipt transaction with the Supply Company, and within thirty days thereafter, filed a certificate with the Secretary of State pursuant to the Uniform Trust Receipt Law. Civil Code, Sections 3012 to 3016.16. On a list of property attached to the alleged trust receipt appears the three water softeners. On August 16, 1948, a voluntary petition in bankruptcy was filed by the partners of the Supply Company, and on or about September 20, 1948, Lynch was appointed trustee and took possession of the water softeners. Thereafter, on October 7, 1948, the trustee sold the water softeners and paid the proceeds of the sale (less certain deductions) a net of $840.25, to the Bank of America.

On October 25, 1948, Brooks commenced an action in municipal court against Lynch the trustee, Bank of America and the Supply Company for conversion of his property. On October 27, 1948, a temporary restraining order was signed by the referee restraining Brooks and his attorney, Leetham, from proceeding with the municipal court action. The order was made returnable on November 8, 1948, and on that date Leetham and Brooks filed a memorandum in opposition to making the restraining order permanent. The referee held that he had jurisdiction of the controversy and permitted the filing of a petition for an order to show cause why Lynch, the trustee, should not be held liable and made this returnable December 15, 1949. On December 15, 1949, the referee permitted the filing of an order to show cause directed to the Bank of America, bringing them into the controversy. This was made returnable January 3, 1950, and the Bank of America appeared, consented to the jurisdiction of the court and the case was tried by the referee on January 3 and 4, 1950.

Following the trial the referee made findings of fact, conclusions of law and an order dated June 27, 1950, whereby the referee ordered that Brooks take nothing; that the restraining order against Brooks and his attorney from prosecuting the municipal court action be made permanent; and the order to show cause directed to the Bank of America for the return of the money be discharged.

Among other conclusions of law, the referee found that Brooks was the owner of the three water softeners in June of 1946 and never thereafter divested himself of title; that the consignment of the water softeners by Brooks to the bankrupt gave the bankrupt ostensible authority to deal with the property as its own; that the trust receipt constituted a binding and enforceable agreement.

## I

Brooks attacks the jurisdiction of the bankruptcy court, but we find this contention without merit. The trustee came into possession of the property and thereafter under the summary jurisdiction of a bankruptcy court, undoubtedly had jurisdiction to try title to the property. There is some question in the court's mind, as to whether or not the jurisdiction extended further so as to include the right of the bankruptcy court to try the claim for conversion against Lynch and to restrain the prosecution of the municipal court action. However, Brooks and the Bank of America, after November 8, 1948, consented to the jurisdiction of the referee and appeared in the action. Time to review the order of November 8, 1950 and all other orders except that of June 27, 1950, expired without petition for review being filed. The court concludes that the proceeding culminating in the order of June 27, 1950, in view of the limited extent of that order, was within the jurisdiction of the bankruptcy court.

## II

The case raises also the problem as to whether the Supply Company was a factor insofar as the water softeners were concerned.

Section 2026 of the Civil Code states: "A factor is an agent who, *in the pursuit of an independent calling,* is employed by another to sell property for him, and is vested by the latter with the possession or control of the property, or authorized to receive payment therefor from the purchaser." [Emphasis added.]

The question of the interpretation of Section 2026 is not necessary for this decision, and the court reserves its opinion thereon for another day.

## III

The referee in paragraph IV of his conclusions states, "that the aforesaid trust receipt constituted a binding and enforceable agreement." The petition for review in point VI(c) challenges this finding. The trust receipt is in evidence as Exhibit 2 of the referee's hearing of January 4 and the "Statement of trust receipt financing" No. 66059 filed with the Secretary of State is in evidence as Exhibit 1 of the referee's hearing of January 4, 1950.

Chapter IIIA was added to Division 3, Part 4, Title 14 of the Civil Code of California by Statutes of 1935, p. 1930 and the chapter is cited as "The Uniform Trust Receipts Law." The sections run from 3012 to 3016.16.

Section 3014 defines trust receipts. It reads in part as follows:

"§ 3014. [Trust receipt transaction: Acts constituting transaction: Trust receipt defined: Purposes.] (1) A trust receipt transaction within the meaning of this chapter is any transaction to which an entruster and a trustee are parties, for one of the purposes set forth in subdivision (3) of this section, whereby

"(a) The entruster or any third person delivers to the trustee goods, documents or instruments in which the entruster (i) prior to the transaction has, *or for new value* (ii) *by the transaction acquires* or (iii) *as the result thereof is to acquire promptly, a security interest; or*

"(b) The entruster gives new value in reliance upon the transfer by the trustee to such entruster of a security interest in *instruments* or *documents* which are *actually exhibited* to such entruster, or to his agent in that behalf, at a place of business

of either entruster or agent, but possession of which is retained by the trustee; * *." [Emphasis added.]

Thus, a trust receipt to be valid must fall within one of the two situations, (a) or (b) above. An analysis of subdivision (a) shows that the section requires that the entruster or some third person deliver to the trustee, goods, documents or instruments. In our factual situation, the Bank of America is the entruster, the Supply Company is the trustee. There is no evidence that the entruster or any third person delivered to the trustee goods, documents or instruments, in which the entruster, prior to the *transaction* had any security interest. Nor can it be said that for new value *by the transaction,* the entruster acquired, or was to acquire promptly, a security interest. In other words, the delivery of the water softeners by Brooks to the Supply Company had nothing to do with the trust receipt transaction. They were delivered in June of 1946 and the trust receipt transaction did not take place until February 9 of 1948. The section states " * * * by the transaction acquires * * * or is to acquire promptly, a security interest." The word *"transaction"* must include within its terms the *delivery* to the trustee of the goods, instruments or documents.

■■ · In addition this section uses the word "promptly" and the word "promptly" qualifies both the word "acquires" and the words, "is to acquire" and obviously means that the delivery by the third person to the trustee is part of the *same transaction* by which the trust receipt is issued. A typical situation is the case of the manufacturer or distributor of automobiles who delivers the automobiles to the trustee (dealer) and by the giving of new value by the entruster (bank or finance company) a security interest is acquired in the automobiles or the documents or instruments. The facts of our case do not fit subdivision (a).

At first blush the facts would more accurately fit within subdivision (b). In this latter subdivision, the entruster (Bank of America) gives new value, that is advances money in reliance upon the transfer by the trustee (the Supply Company) to said entruster of a security interest in instruments or documents. Note that the word "goods" has been omitted from subsection (b). This therefore is the typical case where the proposed trustee has in his possession the instruments or documents of title to certain goods and is not the situation where a third person delivers to the proposed trustee the goods, documents or instruments.

Subsection (b) requires that the instruments or documents be actually exhibited to such entruster or to his agent, but that the possession of these documents or instruments be retained by the trustee. In other words, the proposed trustee in possession of personal property, is required to exhibit the documents of title, although he thereafter retains them in his possession.

Section 3013 of the Civil Code, in subdivision (2) defines "documents" to mean "any document of title to goods," and in subdivision (5) defines "instrument" to mean a negotiable instrument, a certificate of stock, bond or debenture, or "Any interim, deposit, or participation certificate or receipt, or other credit or investment instrument of a sort *marketed* in the ordinary course of business or finance, of which the trustee, after the trust receipt transaction, appears by virtue of possession *and the face of the instrument* to be the owner * *." [Emphasis added.]

The definition further provides that "instrument" does not include any document of title to goods, and separately defines "goods" as chattels personal other than money, things in action or things affixed to the land.

Thus, the words "instruments or documents" in subdivision (b) of Sec. 3014 were used advisedly; and the word "goods" was omitted advisedly from the same subdivision.

■ Applying this reasoning to the facts in our case, the Supply Company, after the delivery to them of the water softeners by Brooks, at no time held any instrument or document of title. They were not in a position to ever exhibit such documents or instruments to the purported entruster and the undisputed facts show that the official of the Bank of America made no inquiry of the Supply Company as to their ownership

of the water softeners. The testimony of the bank official shows that the partner of the Supply Company did not say he had title and did not say he did not have title.

It is apparent therefore, that the purported trust receipt in evidence in this case is invalid, and cannot comply with either subdivision (a) or (b) of Section 3014, Civil Code

## IV

The trust receipt is invalid for a second reason. Metropolitan Finance Corporation v. Morf, 1941, 42 Cal.App.2d 756, 109 P.2d 969, was a case involving trust receipts and the case is close on its facts to the case at bar. At page 759 of 42 Cal.App.2d at page 971 of 109 P.2d, the court states: " * * * Furthermore it appears that the 'Trust Receipts' were given by Woods to appellant (Metropolitan Finance Corporation) before title to the cars passed to Woods. There had been no registration of the cars in Woods' name nor delivery to him of any endorsed certificate of ownership. Short of an estoppel there was nothing to prevent the application of the provisions of section 186 of the Vehicle Code * * * and the mere delivery of the cars to Woods was ineffective so far as vesting of any title or interest in Woods was concerned. The trust receipt before the passing of the title to Woods, was inoperative to vest any legal title in appellant * * *". At page 761 of 42 Cal.App.2d, at page 972 of 109 P.2d the court concludes: " * * * Appellant's position can be nothing more than that of a pledgee in a pledge of personal property without change of possession * * *" and that appellant was not a bona fide purchaser.

■ Since the Supply Company had no title to the water softeners at the time of the execution of the trust receipt, no title passed thereby, and since the Bank was not a bona fide purchaser, merely a holder of a secret lien, to-wit, a pledge without change of possession, the Bank's rights are inferior to those of Brooks.

## V

■ The trust receipt is invalid for a third reason. Section 3016.9 of the Civil Code of California, requires the entruster to file with the Secretary of State a statement signed by the entruster and the trustee containing as required by subdivision (c) of the section, "a description of the kind or kinds of goods covered or to be covered by such financing." The purpose of the section is obvious. The only notice given to the public of the possible existence of a trust receipt transaction or lien, is in the notice filed with the Secretary of State. The section does not even require a detailed description of the individual property, but since it requires a description of the kind or kinds of goods covered or to be covered, it certainly must be strictly construed.

■ The statement filed with the Secretary of State is in evidence as Exhibit 1 of the referee's hearing of January 4, and the description follows: "Radios, stoves, washers, refrigerators, ice boxes and other gas and electrical equipment." The water softeners in question are without dispute neither gas nor electrical equipment, nor do they come within the other general kinds of property listed in the statement filed with the Secretary of State. The trust receipt, to be valid, must be issued upon the kind or kinds of property described in the statement to the Secretary of State. Accordingly, the trust receipt involved in this proceeding is invalid insofar as it purported to cover water softeners.

## VI

Finally, the trust receipt, Exhibit 11, shows on its face that at the time of issue, February 9, 1948, the security interest held by the Bank of America was to remain in the entruster as security for the payment of the original amount of $1,724.80 with interest at 4%. Thereafter, according to the face of the trust receipt, various amounts were paid off, the last being on November 26, 1948, at which time there remained a balance of $358.44. Accordingly, if the payment by the trustee to the Bank of America was made after November 26, 1948, as it probably was, there was paid to the Bank of America $840.25, when it had due $358.44.

It is true that the trust receipt provides generally on the reverse side that in the event of a default by the trustee or bankruptcy of the trustee, the entruster may serve written notice declaring the trust receipt transaction terminated and that upon such termination the trustee shall either pay all amounts due the entruster or surrender the goods or documents covered by the trust receipt and remaining unsold. However, this is a bankruptcy proceeding and ordinarily there would be paid to the Bank of America only the balance due under this obligation, and it would be prevented from asserting its right to the entire property or the entire funds against the creditors of the estate.

For the reasons above stated, the order of the referee of June 27, 1950 is reversed and the referee is instructed to make suitable findings of fact and conclusions of law, based on this memorandum and to enter an order directing the Bank of America to return the sum of $840.25 to the trustee and directing the trustee to pay this sum to Brooks.